SIMON OSTOLAZA *v.* WARDEN
(9612)

NORCOTT, LAVERY and MAIOCCO, Js.

Argued December 2, 1991—decision released February 25, 1992

*Susan M. Hankins,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (petitioner).

*Julia DiCocco Dewey,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Juliett Crawford,* assistant state's attorney, for the appellee (respondent).

NORCOTT, J. The petitioner, Simon Ostolaza, was found guilty after a jury trial of eight counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), and eight counts of risk of injury to a minor in violation of General Statutes § 53-21.[1] On February 27, 1987, the trial court sentenced the petitioner to seven years imprisonment for each count, to run consecutively, for a total effective sentence of 112 years. The facts regarding this particularly disturbing sexual assault of two minor boys are fully set out in *State* v. *Ostolaza,* 20 Conn. App. 40, 564 A.2d 324, cert. denied, 213 Conn. 808, 568 A.2d 793 (1989), and need not be repeated here.

On appeal from this judgment of conviction, this court affirmed all but one count of the petitioner's conviction and reduced the petitioner's sentence to 105 years. See *State* v. *Ostolaza,* supra.[2]

---

[1] Prior to the jury verdict the trial court granted the petitioner's motion for judgment of acquittal regarding a charge of tampering with a witness in violation of General Statutes § 53a-151.

[2] Recently, the Connecticut sentence review division further reduced the petitioner's sentence to sixty-four years.

On May 2, 1987, during the pendency of his direct appeal, the petitioner filed a petition for a writ of habeas corpus in the Superior Court for the judicial district of Tolland. The third amended petition alleged ineffective assistance of counsel during the petitioner's trial. After a full hearing, the habeas court, *Kaplan, J.,* denied the petitioner's application for habeas relief. The petitioner now appeals to this court from the judgment of the habeas court, claiming that the habeas court failed (1) to find that the petitioner had ineffective assistance of counsel as to his decision not to testify at trial, (2) to find that trial counsel had incompetently investigated the case and prepared a defense, (3) to find that the trial court had improperly closed the court during a witness' cross-examination, and (4) to reopen the evidence. We affirm the judgment of the habeas court.

It is axiomatic that "[t]he petitioner, as the plaintiff in a habeas corpus proceeding, bears a heavy burden of proof"; *Lubesky* v. *Bronson,* 213 Conn. 97, 110, 566 A.2d 688 (1989); see also *Hayes* v. *Maggio,* 699 F.2d 198 (5th Cir. 1983); and that the claimed error of law must constitute "a fundamental defect which inherently results in a miscarriage of justice . . . ." *Hill* v. *United States,* 368 U.S. 424, 428, 82 S. Ct. 468, 7 L. Ed. 2d 417 (1962). Habeas corpus provides an extraordinary legal remedy for illegal detention; *McClain* v. *Robinson,* 189 Conn. 663, 668, 457 A.2d 1072 (1983); and should be available to those " 'whom society has grievously wronged.' " *Kuhlman* v. *Wilson,* 477 U.S. 436, 447, 106 S. Ct. 2616, 91 L. Ed. 2d 364 (1986). It is against these standards that we measure the petitioner's claims.

The petitioner first makes a broad attack on the effectiveness of his trial counsel. His first two claims are somewhat interrelated in that he argues that the habeas court failed to find (1) that his trial counsel rendered ineffective assistance with respect to his decision not

to testify at trial and (2) that counsel incompetently investigated the case and prepared an inadequate defense. Our Supreme Court has made clear that to succeed in his claim of ineffective assistance of counsel, the petitioner must show that his attorney's performance was not " 'reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law' "; *State* v. *Clark,* 170 Conn. 273, 283, 365 A.2d 1167, cert. denied, 425 U.S. 962, 96 S. Ct. 1748, 48 L. Ed. 2d 208 (1976), quoting *Gentry* v. *Warden,* 167 Conn. 639, 646, 356 A.2d 902 (1975); and that this " 'lack of competency contributed to the conviction.' " *State* v. *Clark,* supra; *Levine* v. *Manson,* 195 Conn. 636, 639, 490 A.2d 82 (1985). Furthermore, our Supreme Court has adopted the two-pronged test for ineffectiveness of counsel set forth by the United States Supreme Court in *Strickland* v. *Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). That test requires a conclusive showing that (1) the attorney's performance was so deficient and the errors made by counsel were so egregious that the attorney was not functioning as counsel; id., 687; and (2) there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id., 694. Thus, added to the petitioner's heavy burden of proof is the requirement that there be a showing of prejudice that had an effect on the judgment. *United States* v. *Frady,* 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982).

As part of his first argument, the petitioner attacks the habeas court's refusal to find that his trial counsel should have filed a pretrial motion in limine which, he contends, would have aided him in his decision whether to testify at trial. As a corollary to this argument, the petitioner claims that the habeas court wrongfully con-

cluded that his counsel did not abandon his duty to advise him properly on the decision whether to testify. Neither of these claims has merit.

I

TRIAL COUNSEL'S PRETRIAL DECISIONS AND ADVICE

The petitioner's first claim is that his trial counsel's failure to file a motion in limine in order (1) to obtain a ruling concerning the admissibility of his prior convictions and (2) to assess the exercise of his right to testify constituted ineffective assistance of counsel to his prejudice. After a full hearing, the habeas court found no merit to these claims. We agree.

At the habeas trial, the court heard all of the petitioner's evidence relevant to this claim and concluded that "trial counsel's advice concerning the admissibility of the prior convictions and the 'pros and cons' of testifying constituted sound professional judgment." When the conclusions of the habeas court are attacked on appeal, they are reviewed to determine whether they are legally and logically supported by the facts or involve an erroneous application of law materially relevant to the case. *Parham* v. *Warden,* 172 Conn. 126, 131, 374 A.2d 137 (1976); *Tyson* v. *Warden,* 24 Conn. App. 729, 736, 591 A.2d 817, cert. denied, 220 Conn. 909, 597 A.2d 340 (1991).

Here, the habeas court reviewed the relevant law regarding the impeachment of the defendant as a witness by proof of prior convictions of crimes for which imprisonment may be more than one year. See General Statutes § 52-145 (6); *State* v. *Hamele,* 188 Conn. 372, 383, 449 A.2d 1020 (1982); *State* v. *Nardini,* 187 Conn. 513, 521, 447 A.2d 396 (1982). It then applied that law to certain relevant facts before it and concluded that "some evidence of the prior convictions would have been allowed to impeach Ostolaza's testi-

mony." More relevant were the facts that (1) the petitioner had initially given his trial counsel a false name (Simon Robles) and (2) his record reflected recent[3] convictions for murder and robbery. The habeas court also reasoned that the petitioner's robbery conviction, in particular, would have been admissible to attack his credibility because such a crime has long been held to bear on the credibility of one who has been convicted of it. *State* v. *Harrell,* 199 Conn. 255, 263, 506 A.2d 1041 (1986). Furthermore, the habeas court determined that the probative value of such convictions often outweighs any prejudice engendered by their admission. We find nothing improper in the habeas court's conclusion that the trial counsel's advice concerning the admissibility of the prior conviction constituted adequate professional judgment.

Similarly, we find that the court's conclusion as to trial counsel's advice that the defendant should not testify is fully supported by the record. It is the right of every criminal defendant to testify on his own behalf; *Rock* v. *Arkansas,* 483 U.S. 44, 49, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987); and to make that decision after full consultation with trial counsel. See *State* v. *Davis,* 199 Conn. 83, 93, 506 A.2d 86 (1986). Equally axiomatic is the proposition that an accused must take some affirmative action regarding his right to testify. *United States* v. *Systems Architects, Inc.,* 757 F.2d 373, 375 (1st Cir.), cert. denied, 474 U.S. 847, 106 S. Ct. 139, 88 L. Ed. 2d 115 (1985); *State* v. *Paradise,* 213 Conn. 388, 405, 567 A.2d 1221 (1990).

---

[3] The petitioner's prison release dates for his prior convictions occurred within ten years of his trial. Therefore, both those convictions would satisfy the "remoteness in time factor" established by rule 609 (b) of the Federal Rules of Evidence and adopted by our Supreme Court. See *State* v. *Hamele,* 188 Conn. 372, 384 n.7, 449 A.2d 1020 (1982); *State* v. *Nardini,* 187 Conn. 513, 526, 447 A.2d 396 (1982).

It is clear from a review of the record that the habeas court correctly determined that this claim was meritless. First, the petitioner never evinced any desire to testify at trial. The habeas court found that trial counsel's advice regarding the pros and cons of the decision to testify was sound: "If Ostolaza did choose to testify, he would have been subject to attack based upon (1) his robbery conviction, (2) the fact that he was working under an assumed name and false social security number while collecting workman's compensation, (3) claims of burglary and tampering with a witness that allegedly occurred during the trial, and (4) the possibility of some reference to his murder conviction." Second, because the nature of the petitioner's attack on the integrity of the trial is collateral in nature, he must establish that he was deprived of due process and that a fundamental defect existed at trial concerning this claim that "inherently result[ed] in a complete miscarriage of justice . . . ." *Hill* v. *United States,* 368 U.S. 424, 428, 82 S. Ct. 468, 7 L. Ed. 2d 417 (1962). This the petitioner cannot do here.

Finally, we find that the petitioner's claim that the habeas court wrongfully concluded that he had waived his right to testify must fail. Consistent with our previous discussion regarding his right to testify, the record supports the habeas court's conclusion that the petitioner, after hearing evidence relating to his prior felony convictions during the examination of certain defense witnesses, voluntarily and knowingly chose not to testify on his own behalf.

II

ADEQUACY OF PRETRIAL INVESTIGATION

The petitioner next attacks the habeas court's rejection of his claim that his counsel had conducted an inadequate pretrial investigation. He unsuccessfully argued to the habeas court that his trial counsel failed

to investigate adequately potential witnesses who would have assisted in his defense and failed to conduct an adequate cross-examination of witnesses. In effect, the petitioner attacks the entire trial preparation, strategy and conduct of his counsel.

"Constitutionally adequate assistance of counsel includes competent pretrial investigation." *Siemon* v. *Stoughton,* 184 Conn. 547, 554, 440 A.2d 210 (1981). The failure to conduct an adequate investigation cannot be excused in the penumbra of trial tactics. Id., 556. While it is incumbent on a trial counsel to conduct a prompt investigation of the case and "explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction"; id. n.3; counsel need not track down each and every lead or " 'personally investigate every evidentiary possibility before choosing a defense and developing it.' *Sullivan* v. *Fairman,* [819 F.2d 1382, 1392 (7th Cir. 1987)]." *Montgomery* v. *Petersen,* 846 F.2d 407, 413 (7th Cir. 1988).

The habeas court found that the trial counsel adequately conducted a "thorough investigation of the facts relevant to the charges and defenses." In a habeas corpus proceeding, the petitioner's burden of proving that a fundamental unfairness had been done is not met by speculation but by demonstrable realities. *Adams* v. *United States,* 317 U.S. 269, 281, 63 S. Ct. 236, 87 L. Ed. 268 (1942). One cannot successfully attack, with the advantage of hindsight, a trial counsel's trial choices and strategies that otherwise constitutionally comport with the standards of competence. Here, the record reveals many significant factors that support the habeas court's conclusion that petitioner's trial counsel adequately conducted an investigation and exhibited reasonable competence in this case.

The petitioner claims that his counsel's representation was inadequate because he failed to investigate and prepare two possible defenses, namely, the so-called "church" or good character defense, and a "work" defense, in the nature of a partial alibi. The defenses were predicated on the alleged testimony of some four hundred witnesses and records allegedly left uninvestigated by trial counsel.

The church defense, in essence, was that the petitioner could demonstrate his good character and exemplary conduct with the victims and other young males during his involvement and participation in many church affairs. The habeas court, presented with very limited facts at the habeas trial, found this claim unavailing. Our review reveals that, in fact, two of the witnesses before the habeas court gave minimally relevant testimony that often related to irrelevant time periods. More important, two witnesses admitted that certain church records, on which parts of their testimony rested, had been altered by one of the witnesses who had conferred with the petitioner prior to the habeas proceeding. In sum, the habeas court received no specific evidence with respect to the names or substance of the almost four hundred missing witnesses whom trial counsel allegedly failed to contact. There also was no showing whatsoever that these witnesses and their testimony would be relevant and admissible, or that they were made available to trial counsel prior to trial. Under the circumstances, it is clear that the habeas court's finding of fact that the petitioner's counsel did not give him adequate representation with respect to the church defense must be affirmed.

Similarly, the petitioner's attack on the habeas court's finding regarding the so-called work defense also must fail. The habeas court found that counsel's decision not to pursue a "partial work-alibi defense" was a competent and adequate trial strategy that fell

within the *Strickland* standards. See *Strickland* v. *Washington,* supra, 690. The following facts presented to the habeas court support its rejection of the petitioner's argument in this regard: (1) the petitioner's work schedule constituted only a partial alibi that demonstrated his opportunity to commit the crimes charged on several of the days alleged in the information; (2) the petitioner had been working at the Clinton nurseries under an assumed name and a false Social Security number while simultaneously collecting workers' compensation payments from Southern Connecticut State University; and (3) certain witnesses' testimony regarding this defense was contradicted by the petitioner's testimony at the habeas hearing.

The record here clearly supports the habeas court's conclusion that trial counsel conducted a competent investigation and made informed strategic choices for the trial. The petitioner has failed to satisfy the burden of proof on appeal that the habeas court rejection of his argument that, but for counsel's failure to pursue the aforementioned defenses, the result of the trial would have been different. Id., 694.

### III

### CLOSURE OF THE COURTROOM

### A

The petitioner's third claim is that the habeas court failed to find that he had ineffective assistance of trial counsel and appellate counsel as a result of its failure to find that the trial court improperly closed the courtroom, thereby denying him his sixth amendment right to a public trial. U.S. Const., amend. VI. Although we agree that the habeas court improperly failed to find that closure occurred, we cannot agree that such a finding would establish ineffectiveness of counsel under the circumstances here.

The following additional facts are necessary to our resolution of this claim. On the second day of trial, when one of the minor complainants was to resume his testimony after a lunch break, the trial court, after a sidebar conference with counsel, gave the following instruction: "Sheriff, because of the nature of the trial and the testimony of the minor, I am going to ask that the court be kept clear of the members of the public and the press. Would you post a note to that effect please?" The testimony of the petitioner's trial counsel at the habeas proceeding indicates that the trial court's action was prompted by the earlier entry into the courtroom of an attorney, with whom trial counsel was acquainted, while one of the minor complainants was testifying.

The record indicates that neither the petitioner nor the state requested that the courtroom be closed. It reveals that the trial court did not conduct a hearing on or make findings as to the necessity for closure prior to barring the public and the press. The petitioner's trial counsel also did not object to the court's action or avail himself of the statutory remedy of an immediate appeal to this court, pursuant to General Statutes § 51-164x.[4] Moreover, this claim was not raised on

---

[4] General Statutes § 51-164x provides: "APPEAL OF ORDER PROHIBITING ATTENDANCE AT COURT SESSION. (a) Any person affected by a court order which prohibits any person from attending any session of court, except any session of court conducted pursuant to section 46b-11, 46b-49, 46b-122 or 54-76h or any other provision of the general statutes under which the court is authorized to close proceedings, whether at a pretrial or trial stage, shall have the right to appeal such order by filing a petition for review with the appellate court within seventy-two hours from the issuance of such court order.

"(b) No such order shall be effective until seventy-two hours after it has been issued, and the filing of any petition for review shall stay the order.

"(c) The appellate court shall provide an expedited hearing on such petition in accordance with such rules as the judges of the appellate court may adopt, consistent with the rights of the petitioner and the parties to the case."

direct appeal, but was raised for the first time during the habeas proceeding.

In finding that no closure of the courtroom had occurred, the habeas court determined that "the trial court's temporary and limited order, aimed at avoiding disruption and maintaining decorum in the courtroom, did not implicate" the petitioner's right to a public trial. It found "no evidence that any persons who were then present in the courtroom were removed from the courtroom and thereby excluded from witnessing the proceedings." Finally, the habeas court found that even if the petitioner's right to a public trial was implicated, 'there was a reasonable basis in fact for a determination that closure was required to maintain order in the courtroom and to foster full and truthful testimony" given the nature of the proceeding and the testimony of the minor complainant.

A defendant's right to a public trial is guaranteed in all criminal proceedings by the sixth amendment to the United States constitution. *Waller* v. *Georgia,* 467 U.S. 39, 46–47, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984). This right is made applicable to the states through the fourteenth amendment; *Duncan* v. *Louisiana,* 391 U.S. 145, 148, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968); and also is encompassed in article first, § 8, of the Connecticut constitution. *State* v. *Herring,* 210 Conn. 78, 98–99, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989). Public trials vindicate an important public interest in the judicial system and help ensure testimonial trustworthiness. *State* v. *Sheppard,* 182 Conn. 412, 415, 438 A.2d 125 (1980). Openness of a criminal trial enhances both its basic fairness and the appearance of fairness, which is essential to public confidence in the system. *Press-Enterprise Co.* v. *Superior Court,* 464 U.S. 501, 508, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984); *State* v. *Herring,* supra, 99. The right to a public trial, however, is not absolute.

*Waller* v. *Georgia,* supra, 45; *State* v. *Sheppard,* supra. "An accommodation must sometimes be made between the individual's right to a public trial and other societal interests that might justify closing the courtroom to the public." *State* v. *Sheppard,* supra, 416. In light of these concerns, a court's power to order a closure of the courtroom should "be sparingly exercised, and limited to those situations where closure is demonstrably necessary to further the administration of justice." Id.; *State* v. *Herring,* supra.

Closure of a criminal trial, therefore, requires that a "compelling need" to exclude the public be demonstrated. *State* v. *Frazier,* 185 Conn. 211, 231, 440 A.2d 916 (1981), cert. denied, 458 U.S. 1112, 102 S. Ct. 3496, 73 L. Ed. 2d 1375 (1982); *State* v. *Sheppard,* supra, 417. In *State* v. *Kelly,* 208 Conn. 365, 545 A.2d 1048 (1988), our Supreme Court declared that " '[t]he presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.' " Id., 372, quoting *Press-Enterprise Co.* v. *Superior Court,* supra, 510. Further, the closure must be no broader than necessary, and the trial court must first consider reasonable alternatives to closure. *State* v. *Kelly,* supra, 372; *Waller* v. *Georgia,* supra, 48. When a court fails to make findings adequate to support the closure, a closure order is improper. *State* v. *Kelly,* supra; *Waller* v. *Georgia,* supra.

In this case, we disagree with the habeas court's conclusion that no closure occurred. The trial court explicitly barred the public and the press from entry to the courtroom by having a notice posted to that effect. Although the state relies on *State* v. *Herring,* supra, in support of its contention that no closure

occurred, the situation before us today is distinguishable. In *State* v. *Herring, supra,* the trial court ordered the sheriff to post a "Do Not Enter" sign and to lock the courtroom doors. Id., 98. The trial court informed the defendant, who had objected to the court's actions, that the purpose of closing the courtroom was to ensure that the jury's concentration would not be disturbed while it was listening to the court's instructions. Id., 99. On appeal, our Supreme Court found that the trial court's action did " 'not explicitly exclude anybody and [was] designed solely to regulate the ingress and egress of the spectators. . . . Locking the doors during the charge to avoid disruption—allowing those already present to remain—does not seek to exclude the public or frustrate the salutary purposes of public scrutiny.' " Id., 100, quoting *People* v. *Colon,* 71 N.Y.2d 410, 416, 521 N.E.2d 1075, 526 N.Y.S.2d 932, cert. denied, 487 U.S. 1239, 108 S. Ct. 2911, 101 L. Ed. 2d 943 (1988).

Here, however, the trial court explicitly excluded both the public and the press during a witness' testimony. There is no indication in the record whatsoever that the trial court was merely seeking to regulate the ingress and egress of spectators or to ensure that the witness was not distracted. Aside from a general reference to "the nature of the trial and the testimony of the minor," nothing in the record indicates that the trial court first considered reasonable alternatives to closure; *State* v. *Kelly, supra; Waller* v. *Georgia, supra;* or that it articulated specific findings that demonstrated a compelling need to override the petitioner's right to a public trial. *State* v. *Kelly, supra,* 372–74; *State* v. *Sheppard, supra,* 417.

Because of the lack of findings, we decline to speculate as to the trial court's reasons for its closure order. We note, nevertheless, that a substantial or compel-

ling interest may exist in protecting young witnesses who testify in cases involving allegations of sexual abuse. *State* v. *Sheppard,* supra, 416–17; *State* v. *Purvis,* 157 Conn. 198, 207, 251 A.2d 178 (1968), cert. denied, 395 U.S. 928, 89 S. Ct. 1788, 23 L. Ed. 2d 246 (1969); see also *Globe Newspaper Co.* v. *Superior Court,* 457 U.S. 596, 607, 102 S. Ct. 2613, 73 L. Ed. 2d 248 (1982). The United States Supreme Court, however, has made clear that any simple blanket rule mandating closure in such cases violates the constitution. See *Globe Newspaper Co.* v. *Superior Court,* supra; see also *State* v. *Sheppard,* supra, 417 ("We are not prepared to say that every charge of rape involving a complainant who is a minor" warrants closure). The age of an alleged victim, the nature of the alleged offense and the potential for harm to the victim are factors to consider in determining whether closure is proper. *United States* v. *Galloway,* 937 F.2d 542, 546 (10th Cir. 1991). Here, however, the trial court did not articulate any findings whatsoever, thereby precluding a reviewing court from determining the propriety of the closure order. See *State* v. *Kelly,* supra, 374.

The trial court's order also was overly broad; *State* v. *Kelly,* supra, 372; *Waller* v. *Georgia,* supra, 48; in that it excluded the press from hearing a portion of the minor complainant's testimony when the press had not been barred from the courtroom during prior testimony by the same complainant. As with exclusion of the public from the courtroom, a compelling interest must be demonstrated in articulated findings to justify exclusion of the press. *Globe Newspaper Co.* v. *Superior Court,* supra, 606–607; *Richmond Newspapers, Inc.* v. *Virginia,* 448 U.S. 555, 581, 100 S. Ct. 2814, 65 L. Ed. 2d 973 (1980). We conclude, therefore, that the habeas court improperly failed to find that the trial court ordered closure of the courtroom.

## B

We next consider whether the failure of the petitioner's counsel to raise this claim on direct appeal constitutes ineffective assistance of appellate counsel, thereby requiring a new trial. We conclude that it does not.

We begin first by setting forth the scope of our review. In *Valeriano* v. *Bronson,* 209 Conn. 75, 546 A.2d 1380 (1988), our Supreme Court declared that ineffective assistance of appellate counsel claims automatically satisfy the deliberate bypass requirement. Id., 85. When this court reviews a claim of ineffective assistance of appellate counsel on appeal from the habeas court, "it is simpler and more appropriate to move directly to the *Strickland* test. . . . There is no need to confuse this process by utilizing the cause and prejudice test." Id., 84–85. Recently, in *Johnson* v. *Commissioner,* 218 Conn. 403, 589 A.2d 1214 (1991), our Supreme Court adopted the federal "cause and prejudice" standard enunciated in *Wainwright* v. *Sykes,* 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977), for habeas review of constitutional claims not raised at trial.

We adhere to the *Strickland* test for review of ineffective assistance of appellate counsel claims on appeal from a habeas court for two reasons. First, our Supreme Court in *Johnson* v. *Commissioner,* supra, did not expressly or implicitly overrule *Valeriano* v. *Bronson,* supra, with respect to the standard of review for claims of ineffective assistance of *appellate* counsel. Second, the habeas court in this case issued its ruling prior to the time *Johnson* v. *Commissioner,* supra, was decided. We note, however, that under either standard—*Strickland* or cause and prejudice—the petitioner's claim of ineffective assistance of appellate counsel is without merit.

Under *Strickland* v. *Washington,* supra, it must be shown that counsel's performance was so deficient that he was not functioning as counsel. Id., 687. It must further be shown that a reasonable probability exists that counsel's errors deprived the defendant of a fair appeal and caused an unreliable conviction to stand. Id.; *Valeriano* v. *Bronson,* supra, 82. The petitioner bears the burden to establish that counsel's conduct falls below the *Strickland* standard. *Quintana* v. *Warden,* 220 Conn. 1, 5, 593 A.2d 964 (1991).

In this case, we must determine whether appellate counsel's failure to raise the public trial issue on direct appeal fell below the reasonable competence exhibited by attorneys with ordinary training and skill in the criminal law. *Levine* v. *Manson,* 195 Conn. 636, 639, 490 A.2d 82 (1985); *Giannotti* v. *Warden,* 26 Conn. App. 125, 130, 599 A.2d 26 (1991). We conclude that the actions of the petitioner's appellate counsel did not fall below that standard.

Whether an issue is raised on appeal is a matter of strategy and tactics that is between the petitioner and his counsel. It is not for a court to second-guess matters of strategy and tactics. *Fair* v. *Warden,* 211 Conn. 398, 407, 559 A.2d 1094, cert. denied, 493 U.S. 981, 110 S. Ct. 512, 108 L. Ed. 2d 514 (1989). " '[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.' " *Williams* v. *Warden,* 217 Conn. 419, 434, 586 A.2d 582 (1991), quoting *Strickland* v. *Washington,* supra, 690. Judicial scrutiny must be highly deferential, and a reviewing court acts with a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Chace* v. *Bronson,* 19 Conn. App. 674, 678, 564 A.2d 303, cert. denied, 213 Conn. 801, 567 A.2d 832 (1989).

Although petitioner's counsel concedes error in failing to raise the public trial issue on direct appeal, the constitution does not guarantee that an attorney will recognize and raise every conceivable constitutional claim. *Engle* v. *Isaac,* 456 U.S. 107, 134, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982). It also does not guarantee the assistance of an attorney who will make no mistakes. *United States* v. *Campbell,* 616 F.2d 1151, 1152 (9th Cir. 1980); *Giannotti* v. *Warden,* supra, 130. Defendants are entitled to reasonably professional assistance, not perfect representation. *Chace* v. *Bronson,* supra. We conclude that the petitioner has not sustained his burden under the *Strickland* standard of demonstrating that appellate counsel's conduct fell below the standard of reasonably effective assistance as measured by the bar generally. Since the petitioner has not met the first prong of the *Strickland* test, we need not reach the second prong. *Strickland* v. *Washington,* supra, 697; *Valeriano* v. *Bronson,* supra, 86.

Our conclusion is no different under a "cause and prejudice" analysis. " '[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.' " *Johnson* v. *Commissioner,* supra, 422, quoting *Murray* v. *Carrier,* 477 U.S. 478, 486–87, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986); *Valeriano* v. *Bronson,* supra, 83. The petitioner must establish cause and prejudice conjunctively in order to obtain relief. *Murray* v. *Carrier,* supra, 496–97; *Johnson* v. *Commissioner,* supra, 419. Because the petitioner has failed to demonstrate cause, his claim fails. *Johnson* v. *Commissioner,* supra; see also *Valeriano* v. *Bronson,* supra (petitioner whose claim fails to meet *Strickland* standard also fails to demonstrate cause).

Finally, the same analysis applies with equal force to the petitioner's claim of ineffective assistance of trial counsel. The record clearly indicates that trial counsel was aware that our rules of practice contain a provision relating to closure of a courtroom.[5] The record also shows that trial counsel not only did not object to the closure, but in fact agreed with the court's action. Decisions concerning matters of trial strategy and tactics rest with counsel. " 'He, not the client, has the immediate—and *ultimate*—responsibility of deciding if and when to object. . . . Not only [does such a decision] rest with the attorney, but [it] must, as a practical matter, be made without consulting the client.' " (Emphasis in original.) *State* v. *Davis,* supra, 95, quoting *Wainwright* v. *Sykes,* supra, 93 n.1. The decision of a trial lawyer not to state an objection is not evi-

---

[5] Practice Book § 895 provides: "[CONTROL OF JUDICIAL PROCEEDINGS]—EXCLUSION OF THE PUBLIC

"(a) Upon motion of the prosecuting authority or of the defendant, or upon his own motion, the judicial authority may, when constitutionally permissible, order that the public, which may include the news media, be excluded from any portion of a proceeding when there is a substantial likelihood that the presence of the public, including the news media, would unduly inhibit any testimony, or endanger the safety of any witness, or interfere with the defendant's right to a fair trial or when exclusion is required by statute. In jury trials, the probability of publication of the evidence or of any argument adduced at a hearing outside the presence of the jury shall be a sufficient reason for excluding the public, including the news media, from that portion of the trial, upon the ground of interference with the right to a fair trial. The time and date of any such order shall be entered by the court clerk in the court file together with such order. With the exception of orders concerning any session of court conducted pursuant to Gen. Stat. §§ 46b-11, 46b-49, 46b-122, 54-76h or any other provision of the general statutes under which the court is authorized to close proceedings, no order shall be effective until seventy-two hours after it has been issued.

"(b) With the exception of orders concerning any session of court conducted pursuant to Gen. Stat. §§ 46b-11, 46b-49, 46b-122, 54-76h or any other provision of the general statutes under which the court is authorized to close proceedings, any person affected by a court order issued pursuant to paragraph (a) shall have the right to appeal the order within seventy-two hours of its issuance by filing a petition for review with the appellate court pursuant to the appellate court rules. (See Gen. Stat. § 51-164x.)"

dence of incompetency. *Levine* v. *Manson,* supra, 648. We do not second-guess tactical decisions. *Fair* v. *Warden,* supra.

We therefore conclude that the petitioner has not been denied effective assistance of trial counsel or appellate counsel in view of the context of the proceedings as a whole. The trial court's failure to demonstrate a compelling need to close the courtroom and to make specific findings in support of its action does not automatically warrant a new trial. Cf. *Waller* v. *Georgia,* supra, 50 ("the remedy should be appropriate to the violation"). To obtain such relief in the context of this case would require a showing that the petitioner's attorneys performed below the *Strickland* standard of reasonably effective assistance. This has not occurred.

## IV

### MOTION TO REOPEN EVIDENCE

The petitioner's final claim that the habeas court wrongfully denied his motion to reopen the case after the habeas trial had concluded requires little discussion.

The factual setting of this claim is as follows. Approximately one month after the habeas trial had ended, the petitioner's counsel conducted an ex parte deposition of one of the minor complainants. During this deposition, the minor allegedly recanted his trial accusations. About two months thereafter, the petitioner moved the habeas court to reopen the case. On February 27, 1990, the habeas court denied the motion, initially questioning the propriety of such a motion after a habeas corpus trial where the principal issue was whether counsel had been ineffective. Nonetheless, the habeas court specifically found that "there [was] no way that trial counsel could be placed on notice that [the] witness would later recant [his] testimony," and that

a petition for a new trial addressed to the trial court was the more appropriate procedural avenue for the petitioner to follow. We agree.

The decision to reopen testimony rests within the sound discretion of the trial court. *State* v. *Sanchez,* 200 Conn. 721, 729–30, 513 A.2d 653 (1986). Reversal of that discretion is appropriate where the proponent of the motion to reopen successfully carries the burden of proving that " 'an abuse of discretion is manifest or where an injustice appears to have been done.' " *State* v. *Holmquist,* 173 Conn. 140, 152, 376 A.2d 1111, cert. denied, 434 U.S. 906, 985 S. Ct. 306, 54 L. Ed. 2d 193 (1977). Here, the habeas court reasonably concluded that the respondent's counsel, who had not participated in the deposition and had no notice of the alleged recanted testimony, would have been placed in an untenable and disadvantaged position. Further, the habeas court noted that one of the two minor complainants had died. The consideration of whatever complications this situation presented for the respondent's habeas counsel was inherent in the court's ruling.

Accordingly, we agree with the habeas court's conclusion that the better remedy for the petitioner to pursue was a petition for a new trial. *State* v. *Murdick,* 23 Conn. App. 692, 704–705, 583 A.2d 1318 (1991). This claim does not involve an allegation of ineffective assistance of counsel. Under the circumstances of this case, a witness' alleged recantation of trial testimony given years before does not require that the habeas court reopen the case. See *United States* v. *DiPaolo,* 835 F.2d 46 (2d Cir. 1987).

The judgment of the habeas court is affirmed.

In this opinion the other judges concurred.