[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action is a petition seeking habeas corpus relief from allegedly unlawful confinement resulting from a judgment of conviction after a jury trial, for felony murder, General Statutes § 53a-54c, for which the petitioner received a sentence of sixty years imprisonment. the petitioner claims his confinement is unlawful because his trial counsel provided ineffective assistance and because of his "factual innocence."
Specifically, the petitioner asserts in the first count of the amended petition, dated August 8, 1994, that his trial counsel, Attorney Arnaldo E. Granados, rendered ineffective assistance at the petitioner's criminal trial by improperly advising the petitioner to refuse a plea offer and instead proceed to trial; by inadequately investigating and cross-examining Marvin Needham, a prosecution witness; by failing to call Ulysses Smith as a defense witness; by failing adequately to pursue a motion for a bill of particulars which had been previously filed; by inadequately investigating and failing to present the testimony of David Womack and Joseph Aranjo as defense witnesses. In the second count, the petitioner asserts that the testimony of Aranjo constitutes newly discovered evidence establishing the actual innocence of the petitioner.
The respondent generally denies the salient allegations as to both counts and interposes the special defense of procedural default as to the second count.
 I
Our Supreme Court has adopted the two-pronged Strickland test for evaluating ineffective assistance claims; Ostolaza v. Warden,26 Conn. App. 758, 761 (1992). That test requires that the petitioner demonstrate, by a preponderance of the evidence, both that his counsel's performance was substandard and that there exists a reasonable probability that, but for counsel's CT Page 9402 deficiencies, the outcome of the proceedings would have been different. Id.
 A.
Addressing the petitioner's first claim of ineffective assistance, viz. the purported advice by Granados to the petitioner to reject a plea offer, Granados testified at the habeas hearing that no such proposed plea disposition occurred. The petitioner, on the other hand, testified at the habeas hearing that, at the conclusion of the prosecution's case, he was offered the possibility of pleading guilty to a reduced charge of manslaughter first degree.
Credibility is for the trier-of-fact to determine. The court finds Granados' testimony on this point to be credible, and, therefore, the petitioner has failed to meet his burden of proving that Granados misadvised him in this regard.
 B.
Turning to the petitioner's remaining claims of ineffective assistance, a habeas court need not address the question of counsel's performance if it is easier to dispose of an ineffective assistance claim on the ground of insufficient prejudice, Pelletier v. Warden, 32 Conn. App. 38, 46 (1993). Because the court feels that an analysis of the prejudice component of the Strickland standard is dispositive, the court proceeds to that issue directly.
In order to satisfy the prejudice prong of the Strickland
test, the petitioner must prove, by a preponderance of the evidence, that there exists a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different, Levine v. Manson,195 Conn. 636, 640 (1985). Reasonable probability means a probability sufficient to undermine confidence in the verdict,Bunkley v. Commissioner, 222 Conn. 444, 454 (1992).
The petitioner contends that Granados rendered deficient representation by failing to investigate and cross-examine Needham, one of the alleged victims, sufficiently. He argues that Granados failed to obtain and utilize Needham's criminal history in conducting his cross-examination of this witness. As far as the court knows no such criminal history exists or, if it CT Page 9403 does exist, the court is ignorant of any of the particulars contained therein. The petitioner never introduced evidence of any criminal history of Needham's at the habeas hearing. As a result, the petitioner cannot demonstrate that the acquisition of such a history, if it exists, would have aided his cause.
The court has reviewed the transcript of Needham's testimony at the petitioner's criminal trial and finds that Granados thoroughly and competently cross-examined this witness with respect to previous, inconsistent statements and Needham's possible motives for testifying for the prosecution as bearing on the outcome of Needham's own pending narcotics case.
The petitioner also contends that Granados was incompetent for failing to call Ulysses Smith as a defense witness. The petitioner's position and defense theory at his criminal trial was that Smith was the sole shooter and that the petitioner's proximity to the incident was fortuitous. Smith did not testify at the criminal trial nor at the habeas hearing. Nor was any evidence of statements by Smith presented. There is absolutely no reason for the court to believe that had he been called to testify at the petitioner's criminal trial, he would have confessed to the shooting and exonerated the petitioner. Such a contention is mere speculation and cannot contribute to a belief that the petitioner's criminal trial would have been affected had Smith been called as a witness.
The petitioner also contends that Granados inadequately responded to the state's filing of a long-form information in satisfaction of the defense motion for a bill of particulars. The petitioner argues that Granados ought to have moved to compel the prosecution to limit its allegation against the petitioner to that of a principal. There exists no evidence that, even if pressed on this issue, the state's response would have differed in any respect from the allegations charged in the long-form information. Again, the petitioner has failed to meet his burden of proving how the claimed deficiency of Granados prejudiced him.
His final claim of ineffective assistance is that Granados failed to present the exculpatory testimony of Aranjo at the petitioner's criminal trial. Aranjo did testify at the habeas hearing as follows. He was walking along Sixth Street in Bridgeport to the residence of his girlfriend, Aimee Pettway, located on that street. He observed Smith, Needham, Orville Grant, and a fourth person, known as "Rock", gathered in a group CT Page 9404 across the street from Pettway's residence. He also saw the petitioner walking along Sixth Street toward him and on the same side of the street. He heard someone from the group call out the petitioner's name and saw the petitioner cross Sixth Street to join the group. He then saw the petitioner throw up his arms and walk away from the group. Shortly thereafter, he heard shots fired, and he dove for cover behind some bushes. He saw Smith shoot at Grant and Needham as they attempted to flee. He saw Grant fall to the ground about "five or six car-lengths up the street" from where the group had assembled originally. After the shooting ceased, he entered Pettway's residence and spoke to Pettway about the incident. Later that evening he looked out Pettway's window and saw police investigating the scene.
The court finds that Aranjo's testimony is unworthy of belief. The petitioner testified at his criminal trial and never mentioned seeing Aranjo on the night of the incident, nor did he testify that he ever crossed Sixth Street to join Smith, et al. Aimee Pettway did testify at the criminal trial, and, while she heard the gunfire, she never mentioned that Aranjo was with her shortly thereafter and discussed his witnessing the shooting. Also, Aranjo never reported his story to the authorities despite knowing that the petitioner was, according to him, wrongfully arrested for the shooting.
The most important factor belying Aranjo's version of events is that he stated that the deceased victim, Grant, was struck down on the opposite side of the street from Pettway's residence, about five or six car lengths up from where the group had gathered. Grant was killed by a shot to the head, and his corpse was found by Richard Linton some distance up a driveway next door to Pettway's residence at around 10:00 A.M. the following morning.
It is implausible that Aranjo could have forgotten such a significant fact that Grant ran up the driveway of the property adjacent to his girlfriend's residence. It is highly improbable that Aranjo could have forgotten on which side of the street Grant was struck down. It is similarly unlikely that the police who investigated the area shortly after the shooting would have overlooked Grant's body if it actually lay where Aranjo stated it to be.
Aranjo's habeas testimony was in direct conflict with Needham's testimony at the petitioner's criminal trial. Needham, CT Page 9405 who was shot in the thigh during the incident, identified the petitioner as being armed and the apparent leader of the group who robbed him, shot him, and killed Grant. His version of events was consistent with the discovery of Grant's corpse the next morning. The court finds that the petitioner has failed to prove that there exists a reasonable probability that the outcome of his criminal trial would have been different if Aranjo was called as a witness because that testimony lacks veracity.
 II
In the second count of the amended petition, the petitioner contends that he has demonstrated his factual innocence by virtue of Aranjo's testimony. Our Supreme Court has recently held that a habeas petitioner's claim of actual innocence may establish the grounds for ordering a new trial despite the absence of a constitutional violation at the criminal trial, Summerville v.Warden, 229 Conn. 397, 421 (1994). The Supreme Court declined to specify the legal standard which must be satisfied by a petitioner making such a claim, however, Id, 432 and 433. That Court did discuss the variety of standards which have been applied in other jurisdictions to such claims, viz. "the most compelling evidence of actual innocence; a truly persuasive demonstration of actual innocence; an extraordinarily high and truly persuasive demonstration of actual innocence; evidence on which no rational trier of fact could find proof of guilt beyond a reasonable doubt; or evidence that casts fundamental doubt on the accuracy and reliability of the original verdict, and that, if credited, undermines the entire prosecution case and points unerringly to innocence," Id, 439. The Supreme Court also opined that some other high standard might apply, such as "clear and convincing evidence," Id, fn. 22.
In addressing this issue, the court has decided that the proper legal standard applicable to such a claim is the standard set forth by Justice White in his concurring opinion in Herrerav. Collins, ___ U.S. ___ 1135 S.Ct. 853 (1993). That standard requires a habeas petitioner "to show that based on proffered newly discovered evidence and the entire record before the jury that convicted him, no rational trier of fact could find proof of guilt beyond a reasonable doubt," Id, 875. This standard mandates as a threshold determination, that the habeas court combine the proffered new evidence with that presented at the criminal trial and assess whether this combination of evidence is such that no reasonable jury could find the CT Page 9406 petitioner guilty. Only if the combined evidence results in such an assessment need the habeas court hear and evaluate the credibility of such evidence at the habeas hearing to determine whether a new trial is warranted.
The court feels that this standard is best suited for claims of actual innocence for the following reasons. It is the least vague of all the standards so far proposed. It is, therefore, the least subjective in application. Both the petitioner and respondent must clearly know what is expected by way of proof. Rather than trying to interpret more amorphous phrases such as "most compelling," "truly persuasive," "extraordinarily high," "fundamental doubt," and "points unerringly," the habeas court will have a more practical and familiar guide for analyzing such claims. This standard is familiar because it is similar to the standard applicable to deciding motions for judgment of acquittal. On appeal, a reviewing court will be in a better position to scrutinize the habeas court's decision because of the clarity of this standard. Finally, this standard strikes a fair balance between the sometimes countervailing forces of the necessity for finality and the accommodations necessary to avoid incarceration of the innocent.
Applying this legal standard to the present case, the petitioner's proffered evidence falls short of his burden. Even if Aranjo's testimony were to be believed, Needham, an eyewitness and victim, testified that the petitioner was actively involved in the criminal action, appeared to be in charge of that activity, robbed Needham of some money, brandished a gun, and fired at the fleeing victims. A rational jury could believe Needham's version of events and find the petitioner guilty of felony murder beyond a reasonable doubt.
For these reasons, the petition is dismissed.
Sferrazza, J.