[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action is a petition seeking habeas corpus relief from allegedly unlawful confinement resulting from a judgment of conviction, after a jury trial, for robbery first degree, in violation of General Statutes §§ 53a-134(a)(2) and 53a-8; conspiracy to commit robbery first degree, in violation of General Statutes § 53a-48; and hindering prosecution, in violation of General Statutes § 53-166(a), for which the petitioner received a total, effective sentence of twenty-one years incarceration. The judgment of conviction was affirmed on direct appeal, State v.Jackson, 28 Conn. App. 721 (1992).
The petitioner claims his confinement is unlawful because his trial counsel, Attorney Thomas Conroy, rendered ineffective assistance by failing to interview and call as a defense witness Otis Fisher, an alleged coconspirator in the robbery underlying the petitioner's judgment of conviction.
The charges against the petitioner arose from an incident where the petitioner purportedly acted as a "wheelman" for Fisher and James Davis, thereby aiding them in an armed robbery and the flight which followed. The evidence at the petitioner's criminal trial demonstrated that on February 26, 1990, the petitioner drove Fisher and Davis from Bridgeport to New Haven. Fisher and Davis exited the car driven by the petitioner and, armed with a sawed-off shotgun, they approached the victim on foot while the petitioner waited for them in the car. Fisher and Davis robbed the victim at gunpoint, and during the robbery the victim was struck behind the head with the shotgun causing it to discharge. Fisher and Davis then ran to and reentered the waiting car operated by the petitioner. CT Page 11134-K
Fortuitously, two plainclothes detectives spotted Fisher, Davis and the shotgun as the robbers ran to the car. The detectives drove their car alongside the car driven by the petitioner. One of the detectives displayed her badge and handgun and identified herself as a police officer to the petitioner. The petitioner smiled and drove off. The detective pursued, and during this pursuit the petitioner drove at speeds excessive for the icy road conditions causing the car he was operating to fishtail repeatedly. Also, the petitioner negotiated sharp corners during the chase. At some point, the petitioner slowed the car allowing Davis to step out. The petitioner drove on until Fisher jumped from the vehicle. Finally, the petitioner exited the moving vehicle which eventually struck a curb. After a short foot chase, the petitioner was apprehended. The shotgun was recovered from the backseat of the car driven by the petitioner. Soon after his arrest, the petitioner made a statement denying he drove the car.
In addition, the court finds the following facts. Close to the date when jury selection was to begin for the petitioner's criminal trial, the petitioner suggested to Conroy that Fisher be called as a defense witness. The defense theory was that the petitioner had innocently and reluctantly agreed to drive Fisher and Davis from Bridgeport to visit some girlfriends of Davis in New Haven. The petitioner's driving skills were supposedly necessary because neither Fisher nor Davis knew how to drive a car with manual transmission. The petitioner claimed that he was utterly unaware of the robbery or the planning thereof. The petitioner related to Conroy that Fisher might corroborate his story.
At the time of the petitioner's criminal trial, Fisher had pleaded guilty to the robbery and was serving a sentence. Conroy secured a writ of habeas corpus ad testificandum to obtain Fisher's presence at the courthouse where the petitioner was being tried, but for some unknown reason Fisher was not transported there in a timely fashion. As a result, Conroy never spoke to Fisher about the petitioner's role in the robbery.
Instead, Conroy decided to proceed without Fisher's testimony. Conroy based that tactical decision on the following facts. The petitioner, who had no previous felony record, testified in his own behalf, and in Conroy's opinion, had done well on the stand. Fisher, on the other hand, had several felony convictions to which the prosecutor could refer the jury to impeach Fisher's testimony. But more significantly, Fisher had given a tape-recorded statement CT Page 11134-L to the police shortly after his arrest wherein he deflected guilt from himself and implicated the petitioner and Davis in a string of recent robberies. Conroy had reviewed a transcript of this recorded statement.
Conroy felt it was better to refrain from using Fisher because Fisher's lack of credibility might cause the jury to lose faith in the defense altogether and because Fisher's recorded statement portrayed the petitioner and Davis as partners in multiple robberies. Conroy concluded that Fisher's presence as a defense witness at trial would do more harm than good. Conroy discussed this opinion with the petitioner who concurred in the decision to eliminate Fisher as a defense witness. Consequently, Conroy declined to pursue further efforts to speak with Fisher.
Our Supreme Court has adopted the two-pronged Strickland test for evaluating ineffective assistance claims; Ostolaza v. Warden,26 Conn. App. 758, 761 (1992). That test requires that the petitioner demonstrate, by a preponderance of the evidence, both that his counsel's performance was substandard and that there exists a reasonable probability that, but for counsel's deficiencies, the outcome of the proceedings would have been different, Id.
As to the first prong of the Strickland test, the petitioner must demonstrate that his trial attorney's representation fell below an objective standard of reasonableness, Johnson v.Commissioner, 218 Conn. 403, 425 (1991). This standard of reasonableness is measured by prevailing, professional norms, Id. The habeas court must make every effort to eliminate the distorting effects of hindsight and to reconstruct the circumstances surrounding counsel's conduct from that attorney's perspective at the time of the representation, Id.
Basically, the petitioner contends that, without having actually spoken to Fisher, Conroy was unable to make a competent assessment regarding Fisher's utility as a defense witness. At the habeas hearing neither party introduced expert testimony regarding the professional standards applicable to this situation. The court finds that the petitioner's argument misses the point. That point being that, even if Fisher might have testified that the petitioner lacked knowledge of the robbery, his taking the witness stand carried with it a substantial risk that Fisher's previous statement indicating that the petitioner and Davis were an experienced team of robbers would have undermined the defense altogether. CT Page 11134-M
While it was a possibility that the jury might have ignored Fisher's previous felony conviction, disregarded his inconsistent statements about who committed the crime and his portrayal of the petitioner and Davis as partners in crime, and accepted Fisher's corroboration of the petitioner's version of events, the risk that the opposite might occur was a significant one. It was a risk that Conroy was obligated and entitled to weigh against proceeding on the petitioner's testimony as to his knowledge and intent alone.
It is incumbent upon a trial lawyer to conduct a thorough investigation, but counsel need not investigate every evidentiary possibility, Ostolaza v. Warden, supra, 765. Because Conroy arrived at the conclusion that the potential disadvantages of Fisher's testimony outweighed the potential benefits even if Fisher corroborated the petitioner's testimony, he no longer needed to interview Fisher. The potential harm from Fisher's testimony was inherent in his taking the stand and independent of his demeanor, ability to communicate, or degree of consistency with the petitioner's story.
Judicial scrutiny of counsel's performance must be highly deferential, and the habeas court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," Quintana v. Warden, 220 Conn. 1,5 (1991). The burden is on the petitioner to prove, by a preponderance of the evidence, that Conroy's representation was substandard. The court finds that the petitioner has failed to meet this burden by proving that Conroy's decision to eschew calling Fisher as a witness fell below prevailing, professional norms.
For these reasons, the petition is dismissed.
Sferrazza, J.