[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action is a petition seeking habeas corpus relief from allegedly unlawful confinement resulting from a judgment of conviction, after a jury trial, for felony murder, in violation of General Statutes § 53a-54c, upon which judgment the petitioner received a life sentence.
In the first count of his amended petition, the petitioner claims his confinement is unlawful because certain rulings of the trial court violated his right to due process of law. This count was withdrawn before the taking of evidence at the habeas hearing. The second count asserts that the petitioner was denied the effective assistance of counsel at his criminal trial. Specifically, the petitioner contends that his trial counsel, Attorney Michael Whelton, rendered ineffective assistance by misadvising the petitioner regarding the potential use by the prosecution at his felony murder trial of the petitioner's earlier guilty pleas in two other cases; by misadvising the petitioner with respect to the petitioner testifying in a codefendant's case; and by improperly cross-examining a prosecution witness.
On April 26, 1982, the petitioner was arraigned on a charge of felony murder arising out of the death of a seventy-five year old caretaker at St. Joseph's Cathedral in Hartford on April 2, 1982. Floyd Simms and Waymon Mohagel were also arrested in connection with this homicide. While his felony murder case was pending, the CT Page 1512 petitioner entered guilty pleas to having committed a burglary, along with Mohagel, of a home for retarded persons and to having committed a robbery of a ninety year old parishioner at the cathedral with Simms and Mohagel. The burglary occurred eight days after the homicide, and the robbery occurred six days after the killing.
Over the petitioner's objections, the trial court admitted evidence of the burglary and robbery, including the petitioner's guilty pleas thereto, at his felony murder trial. The trial court ruled that the circumstances of the other crimes demonstrated a common scheme or design and were probative of the petitioner's identification as one of the perpetrators's of the felony murder. The trial court's ruling admitting this evidence was upheld on appeal, State v. Jones, 205 Conn. 638, 657 (1987).
In addition, the petitioner testified at the criminal trial of Simms, which trial preceded the petitioner's. A transcript of this testimony was introduced by the prosecution at the petitioner's felony murder trial (Petitioner's Exhibit A-3, pp. 979 and 980).
Mohagel testified for the state at the petitioner's felony murder trial (Petitioner's Exhibit A-1 and A-2, pp. 353 through 629). Whelton questioned Mohagel on cross-examination extensively (Petitioner's Exhibit A-2, pp. 451 through 594). In particular, Whelton examined Mohagel concerning criminal activity Mohagel and Simms participated in without the petitioner. On direct examination Mohagel commented that he and Simms attempted to dissuade the petitioner from going to the cathedral because past experience taught Mohagel and Simms that little money was available for the taking there.
During cross-examination Whelton sought to confirm the petitioner's lack of past experience at the cathedral with Mohagel and Simms so as to make Mohagel and Simms appear to be acting as a team with the petitioner being merely peripherally involved. On redirect, the prosecution was allowed to try to dispel this impression by questioning Mohagel regarding the petitioner's participation in other, earlier criminal activity at the cathedral. The trial court ruled that Whelton's cross-examination of Mohagel on this point "opened the door" for such redirect by the prosecution. This ruling was also upheld on appeal, Id, 664.
Our Supreme Court has adopted the two-pronged Strickland test for evaluating ineffective assistance claims; Ostolaza v. Warden, CT Page 151326 Conn. App. 758, 761 (1992). That test requires that the petitioner demonstrate, by a preponderance of the evidence, both that his counsel's performance was substandard and that there exists a reasonable probability that, but for counsel's deficiencies, the outcome of the proceedings would have been different. Id.
As to the first prong of the Strickland test, the petitioner must demonstrate that his trial attorney's representation fell below an objective standard of reasonableness, Johnson v.Commissioner, 218 Conn. 403, 425 (1991). This standard of reasonableness is measured by prevailing, professional norms, Id. The habeas court must make every effort to eliminate the distorting effects of hindsight and to reconstruct the circumstances surrounding counsel's conduct from that attorney's perspective at the time of the representation, Id.
Turning to the petitioner's first claim of ineffective assistance, i.e. that Whelton misadvised the petitioner as to the potential admissibility of the petitioner's guilty pleas to the burglary and robbery charges in his upcoming felony murder trial, it should be noted that Whelton also represented the petitioner at the time of his pleas in those cases. The petitioner testified at the habeas hearing that he had no specific recollection of Whelton's advice on this topic. Whelton also testified at the habeas hearing and indicated that he informed the petitioner that, if the petitioner elected to testify at his felony murder trial, the guilty pleas to burglary and robbery would undoubtedly be admissible against him. Whelton also informed the petitioner that even if he refrained from testifying, the guilty pleas might be admissible, but that the state would have a difficult time establishing admissibility. The court finds Whelton's recollection of this advice to be credible and accurate.
No legal expert was presented by either party at the habeas hearing regarding the professional propriety of Whelton's advice. The court finds this advice to be legally and factually sound. The petitioner declined to testify at this felony murder trial. The trial court admitted the evidence of the burglary and robbery as probative of common scheme or design. Our Supreme Court devoted several pages of its opinion to analysis of the trial court's ruling, including references to cases outside of Connecticut, Id, 657 to 664. Whelton never told the petitioner his guilty pleas were definitely inadmissible if he choose not to testify. Whelton characterized the prosecution's burden as high. The fact that the CT Page 1514 prosecution was able to meet this burden does not impugn the advice or make the giving of it deficient. The court concludes that the petitioner has failed to meet his burden of proving that Whelton's representation was substandard.
The petitioner next asserts that Whelton rendered ineffective assistance by improperly advising the petitioner with respect to the potential use at his own criminal trial of the petitioner's testimony at Simms's trial. Again, Whelton represented the petitioner in his pending felony murder case when the codefendant's case came to trial. At the habeas hearing, the petitioner conceded on cross-examination that his memory of Whelton's advice in this regard was poor. Whelton testified that he implored the petitioner not to testify in his companion's case precisely because he feared this testimony could be used against the petitioner at his own trial. Whelton stated that, despite his pleading with the petitioner to avoid testifying, the petitioner decided to ignore Whelton's remonstrations and testify for Simms. Credibility is for, the trier-of-fact to determine. The court finds Whelton's recitation of events believable, especially in light of the petitioner's absence of memory as to Whelton's advice. The use of the petitioner's former testimony was the result of the petitioner's own actions and against Whelton's legal advice. Consequently, the petitioner has again failed to prove Whelton's representation fell below professional standards in this regard.
Finally, the petitioner contends that because Whelton's cross-examination of Mohagel opened the door for the prosecution to elicit on redirect evidence of the petitioner's other criminal activity in the cathedral area, he was denied the effective assistance of counsel. Whelton testified that he questioned Mohagel about his statement on direct that he and Simms knew from past experience that little lucre could be acquired in the cathedral area. Whelton felt that Mohagel's comment reasonably implied that the petitioner was unaware of this state of affairs based on lack of participation in the previous acts of Mohagel and Simms. Whelton hoped by such examination to highlight the lesser or peripheral role the petitioner may have played, as compared to Mohagel and Simms, with respect to the death of the caretaker.
As noted above, no legal expert was presented by the petitioner to substantiate his contention that Whelton's tactical decision to pursue such a line of questioning fell below reasonable, professional standards in defending criminal cases. The petitioner has the burden of demonstrating that Whelton's CT Page 1515 performance was so deficient and his error so serious that the petitioner was no longer functioning as counsel, Quintana v.Warden, 220 Conn. 1, 4 (1991). Judicial scrutiny of counsel's representation must be highly deferential, and the habeas court must indulge in a strong presumption that counsel's conduct falls within the "wide range" of reasonable, professional assistance, Id, 5.
Having carefully reviewed the evidence in this case, including the extensive cross-examination of Mohagel, the court concludes' that the petitioner has failed to prove that Whelton's tactical response to Mohagel's comment was outside the wide range of competent representation. Had Whelton failed to explore the ramifications of the comment, a potential fruitful line of questioning may have been lost. It is unclear that Whelton's actions, from his perspective, necessarily opened the door to previous bad acts by the petitioner.
Whelton's inference from Mohagel's comment, i.e. that the petitioner was a stranger to Mohagel's past experience at the cathedral, was a reasonable one, and one also drawn by our Supreme Court in stating "[t]he testimony suggested that Simms and Mohagel were the main perpetrators of crimes in the cathedral area and that perhaps the [petitioner] was not involved in any of those crimes,"State v. Jones, supra, 667. Whelton can hardly be faulted for attempting to press Mohagel on this point.
For these reasons, the petition is dismissed.
Sferrazza, J.