JOHNNIE SAFFORD *v.* WARDEN, STATE PRISON (14452)

PETERS, C. J., CALLAHAN, GLASS, BORDEN and BERDON, Js.

Argued March 25—decision released July 28, 1992

*Karen A. Goodrow,* assistant public defender, for the appellant (petitioner).

*Jack W. Fischer,* deputy assistant state's attorney, with whom, on the brief, were *Donald B. Caldwell,*

state's attorney, and *Christopher Morano,* assistant state's attorney, for the appellee (respondent).

BORDEN, J. The petitioner appeals[1] from the judgment of the habeas corpus court, *Scheinblum, J.,* denying his petition for a writ of habeas corpus, wherein he challenged his conviction of sexual assault in the first degree, in violation of General Statutes § 53a-70.[2] That conviction had been based upon the petitioner's guilty plea before the trial court, *Schaller, J.,* and the sentence imposed thereon by the trial court, *Arena, J.* The petitioner claims that the habeas court improperly denied his petition because: (1) Judge Arena was barred by the Code of Judicial Conduct from sentencing the petitioner;[3] and (2) the conduct of the petitioner's trial counsel was ineffective as a matter of law. We affirm the judgment of the habeas court.

The record discloses the following facts. According to the factual statement made by the state at the time of the petitioner's guilty plea, the petitioner picked up the female victim, who had been hitchhiking in Hart-

---

[1] Upon a grant of certification to appeal; see General Statutes § 52-470 (b); the petitioner appealed from the judgment of the habeas corpus court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023.

[2] General Statutes § 53a-70 provides: "SEXUAL ASSAULT IN THE FIRST DEGREE: CLASS B FELONY: ONE YEAR NOT SUSPENDABLE. (a) A person is guilty of sexual assault in the first degee when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person, or (2) engages in sexual intercourse with a person under thirteen years of age.

"(b) Sexual assault in the first degree is a class B felony for which one year of the sentence imposed may not be suspended or reduced by the court."

[3] Although the petitioner in his brief in this court purports to raise two separate claims regarding the necessity for Judge Arena's disqualification, we can discern no analytical difference between the two claims. We therefore consider them as one claim.

ford, in November, 1987. He took her to his apartment, where he forced her to engage in sexual intercourse by holding the jagged edge of a broken ashtray to her throat.

As a result of this incident, the petitioner was charged with the crimes of sexual assault in the first degree in violation of General Statutes § 53a-70; see footnote 2, supra; and unlawful restraint in violation of General Statutes § 53a-95. The petitioner pleaded not guilty and elected a jury trial. He was represented by attorney Gerald Klein, who also represented him on three prior pending charges, including another sexual assault charge in which the petitioner's brother was a codefendant.[4] On several occasions, Klein and the state's attorney discussed the petitioner's cases with Judge Arena, who was, at that time, the presiding judge of the criminal division of the Hartford judicial district.[5]

Although the case had been assigned to Judge James Higgins for trial, jury selection was conducted before Judge Schaller. The habeas court found that, during the third day of jury selection, Judge Arena was instrumental in procuring a plea bargain whereby he indicated that, in exchange for the petitioner's plea of guilty to the charge of sexual assault in the first degree, he would impose a sentence of ten years imprisonment, execution suspended after five years, followed by four years probation. Judge Arena also indicated that the

---

[4] The petitioner's brother was represented by independent counsel.

[5] Although Judge Arena's status as the presiding judge is not specifically described as such in this record, such status is apparent from the context in which the various proceedings took place, and is confirmed by the assignment of judges for the period February, 1988, through September, 1989, published in the Connecticut Law Journal. Assignment of Judges, Vol. 49, C.L.J., No. 34, pp. 1B–11B (February 23, 1988). Among the responsibilities of the presiding judge are "[e]xpediting the disposition, fairly, of the court business to which such judge has been entrusted," and "[a]pportioning among the judges the judicial business to which such judge and other judges have been assigned." Id., p. 3B.

defendant could argue for a lesser sentence, and that he might be favorably disposed to a lesser sentence depending on the attitude of the victim.

Accordingly, on January 5, 1989, the defendant pleaded guilty to sexual assault in the first degree before Judge Schaller. The habeas court specifically found that, in the plea canvass, Judge Schaller fully informed the petitioner that Judge Arena had "put together the deal and that [Judge] Arena would be the sentencing judge."[6] At the subsequent sentencing pro-

---

[6] The plea canvass before Judge Schaller discloses the following colloquy:

"The Court: Now perhaps counsel would state what the status of the plea agreement, or the recommendation from the sentencing judge is. I can verify that, because I did also speak directly with Judge Arena, and we can be sure that we all agree on what Judge Arena has said. Mr. Klein?

"Mr. Klein: We did discuss the matter with Judge Arena, and he was familiar with the facts of the case from prior pretrials. And after discussing my client's background with him and some of the possible defenses, should the matter go all the way through trial, he indicated that on a guilty plea, it would be his inclination at this time to impose a sentence of 10 years suspended, after serving five years, and a period of probation; that I would have the right after a PSI, a presentence report, to ask for a lesser sentence, but that he would probably only be inclined to sentence Mr. Safford to a lesser term of imprisonment if something came up in terms of the position of the victim, who I'm sure will have some input into the presentence report. So essentially, it's a ten-year, suspended after five year cap, with the right to argue for a lesser term of imprisonment.

"The Court: And I understand a four-year probation period? That's what was told to me by Judge Arena; four years of probation?

"Mr. Klein: Yes.

"The Court: And in addition, that Judge Arena would be free to impose any special conditions on the probation that he saw fit to impose.

"Mr. Klein: Yes. I've discussed that with Mr. Safford, and there would be no contact with the complainant, etc.

"The Court: Regardless, Judge Arena is not restricted at all, as far as what special conditions he can impose.

"Mr. Klein: Right. Yes; that's correct.

"The Court: Mr. Carlson, does that accord with your understanding?

"Mr. Carlson: That's what I heard Judge Arena say. Yes, Sir.

"The Court: OK. And Mr. Safford, do you understand exactly the status of the plea agreement at this point?

"The Defendant: Yes, Sir.

ceeding before Judge Arena, on February 16, 1989, the petitioner sought to withdraw his guilty plea, claiming that he had been confused when he pleaded guilty. The court, *Arena, J.,* denied his motion to withdraw his plea, and imposed a sentence of ten years imprisonment, execution suspended after five years, followed by four years probation.

The petitioner appealed from that judgment of conviction to the Appellate Court, claiming that the court, *Arena, J.,* had improperly (1) failed to conduct an

"The Court: OK. Let me just restate it, and that is, Judge Arena has indicated that he would impose a sentence of ten years, suspended after five years, followed by four years of probation, with any special conditions of probation he thinks are reasonable or appropriate in this case. You, Mr. Safford, and your attorney have the right to argue for a lesser sentence. However, if Judge Arena chooses to impose a sentence of ten years, suspended after five, with four years of probation, you do not have any right to withdraw your plea. He is free to impose that sentence. It's what we call a cap. If Judge Arena chooses to impose a longer sentence, more jail time, then you would have the opportunity to withdraw your guilty plea, but—so that Judge Arena has committed himself, in a sense, to sentencing you to no more than ten years, suspended after five, followed by four years of probation. Do you understand that exactly?

"The Defendant: Yes, Sir.

"The Court: And there is no—he is not committed to imposing a lesser sentence. He is free to read the presentence and impose this sentence of ten, suspended after five, if he chooses to do that. You have the right to argue for—your attorney has the right to argue for less.

"Mr. Klein: That's our understanding, Your Honor.

"The Defendant: Yes, Sir.

"The Court: And Judge Arena is not bound to impose that. He can choose to impose a longer sentence; longer in the total length or longer in jail time. But if he does that, I'm sure he will give you the opportunity to withdraw your plea and have a trial. But if he chooses to impose that sentence, or something less, then your plea is final once I accept it today. You have no right to withdraw your plea and change your mind. Do you understand that?

"The Defendant: Yes, Sir.

"The Court: Is that what you wish to do?

"The Defendant: Yes, Sir.

"The Court: OK. Have any other promises been made to you by anyone to cause you to plead guilty?

"The Defendant: No."

evidentiary hearing on his motion to withdraw his plea, and (2) sentenced the petitioner after actively participating in pretrial plea negotiations, thereby violating his federal and state constitutional rights to due process. *State* v. *Safford,* 22 Conn. App. 531, 532, 578 A.2d 152, cert. denied, 216 Conn. 823, 581 A.2d 1057 (1990). The Appellate Court rejected the petitioner's claims. With respect to the second claim, which is the only claim of the petitioner's direct appeal relevant here, the Appellate Court first noted that since the petitioner had failed to preserve that claim by moving for Judge Arena's disqualification pursuant to Practice Book § 997,[7] the claim could only be reviewed if it rose to the level of constitutional proportions. Id., 537. The court then stated that the prohibition against a judge participating in plea negotiations is not a constitutional matter, provided that the plea was not judicially coerced and thus voluntary. The court then concluded that since there was no evidence that Judge Arena's participation in the plea bargain resulted in a judicially coerced or otherwise involuntary plea, the petitioner's claim was not of constitutional proportions. Id., 537–38. Accordingly, the court concluded that, under *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989), the petitioner could not prevail on that claim. The Appellate Court also discerned from the record "the possibility that the defendant's failure to make his objections known at the sentencing was not mere inadvertence but a trial tactic." *State* v. *Safford,* supra, 538.

Meanwhile, the petitioner had brought this habeas corpus action. In this action, the petitioner pleaded four

[7] Practice Book § 997 provides: "A motion to disqualify a judicial authority shall be in writing and shall be accompanied by an affidavit setting forth the facts relied upon to show the grounds for disqualification and a certificate of the counsel of record that the motion is made in good faith. The motion shall be filed no less than ten days before the time the case is called for trial or hearing, unless good cause is shown for failure to file within such time."

theories: (1) his plea had been involuntary because it was based upon misinformation supplied to him by his trial counsel; (2) his plea had been involuntary because it was based upon inadequate information supplied to him by his trial counsel; (3) his sentence was illegal because it had been improperly based upon extrarecord information within the knowledge of the sentencing judge; and (4) his trial counsel had been ineffective in giving him misinformation, in giving him inadequate information, and in failing to move for Judge Arena's disqualification.

In its memorandum of decision, however, the habeas court considered the petitioner's claims somewhat differently. The habeas court considered the petitioner to have raised three claims: (1) his plea of guilty had not been voluntary and knowing because Klein had misinformed him about the sentence and had failed to apprise him of exculpatory evidence that had been unearthed during Klein's investigation on the petitioner's behalf; (2) his trial counsel had been ineffective because he had failed to inform the petitioner about the purported exculpatory evidence and had failed to inform him fully about the sentence agreed upon with Judge Arena; and (3) his trial counsel had been ineffective because he had not requested Judge Arena's disqualification.[8] Since the petitioner has not at any time during this appeal challenged this reformulation by the habeas court of his claims therein, we view his appeal accordingly.

The habeas court rejected the petitioner's claims. With respect to the first two claims, the habeas court

---

[8] The petitioner also claimed that his trial counsel had been ineffective because he had not assisted the petitioner in the petitioner's attempt to withdraw his guilty plea. The habeas court rejected that claim as controlled by the petitioner's direct appeal, *State* v. *Safford,* 22 Conn. App. 531, 578 A.2d 152, cert. denied, 216 Conn. 823, 581 A.2d 1057 (1990). The petitioner has not challenged that ruling in this appeal.

concluded that the petitioner's testimony was not credible, and that he had failed to meet his burden of proof of the underlying facts.[9]

With respect to the third claim, namely, that Klein had been ineffective by not requesting Judge Arena's disqualification, the court concluded that there had been no basis for moving to disqualify Judge Arena, based upon Judge Arena's knowledge of the petitioner's other charges, which had been nolled, and Judge Arena's knowledge of the disposition of the petitioner's brother's case.[10] The court concluded that since, under *State* v. *Huey,* 199 Conn. 121, 505 A.2d 1242 (1986), a trial court in imposing sentence may consider information regarding counts that have not been prosecuted, Judge Arena was acting within his discretion in considering the charges that had been nolled. The court also found that Judge Arena had been instrumental in creating the plea bargain, and that the petitioner had been fully aware that Judge Arena would be the sen-

---

[9] Specifically, the habeas court found "not credible" the petitioner's testimony that he did not know what the sentence was going to be when he pleaded guilty. Indeed, the colloquy among the trial court, *Schaller, J.,* the defendant's trial counsel, and the petitioner; see footnote 6, supra; all but vitiates the petitioner's claim of ignorance. With respect to the petitioner's claim regarding the purported exculpatory evidence—a written statement, secured by the investigator employed by Klein, of a woman who had lived in the apartment below the petitioner's apartment at the time of the offense—the habeas court specifically found that the statement was not specific regarding dates or times. The habeas court found, furthermore, that Klein had deemed the statement to be equivocal at best and that the witness if called might be more harmful than helpful to the defense, and that Klein had discussed the statement with the petitioner on more than one occasion. The habeas court concluded that Klein's tactical decision not to call the witness or to order follow-up investigation was reasonable and did not fall below the standard of competent counsel.

[10] The petitioner's brother had been sentenced to sixteen years imprisonment for sexual assault. The petitioner does not, however, make any claim that Judge Arena was biased in fact against the petitioner as a result of this information, or used this information to enhance the previously agreed upon sentence of the petitioner.

tencing judge. The habeas court also noted that the petitioner's own expert witness had indicated that he might not have moved to disqualify Judge Arena. Finally, the court concluded that any prohibition against a judge's participation in plea bargaining is not a matter of constitutional dimension. Accordingly, the habeas court dismissed the petition. This appeal followed.

I

The petitioner's principal claim on appeal is that Judge Arena was barred by Canon 3 (C) (1) of the Code of Judicial Conduct[11] from sentencing the petitioner. The petitioner argues that, irrespective of the propriety of the information that Judge Arena had at the time of sentencing, it was improper as a matter of law for Judge Arena to sentence the petitioner because Judge Arena had actively participated in the plea bargaining that led to the petitioner's plea.

---

[11] The part of Canon 3 (C) (1) on which the petitioner relies provides as follows: "A JUDGE SHOULD PERFORM THE DUTIES OF HIS OFFICE IMPARTIALLY AND DILIGENTLY.

"The judicial duties of a judge take precedence over all his other activities. His judicial duties include all the duties of his office prescribed by law. In the performance of these duties, the following standards apply:

\* \* \*

"C. Disqualification.

"(1) A judge should disqualify himself in a proceeding *in which his impartiality might reasonably be questioned,* including but not limited to instances where:

"(a) he has a personal bias or prejudice concerning a party, *or personal knowledge of disputed evidentiary facts concerning the proceeding . . . ."* (Emphasis added.)

Although in his brief the petitioner cites this entire part of Canon 3, it is clear from the text of his argument that he does not claim that Judge Arena had in fact "a personal bias or prejudice" against him. Rather, the gist of his argument is that Judge Arena's knowledge of his other cases and of his brother's case created the appearance of a lack of impartiality in violation of Canon 3. Indeed, the habeas court record is bereft of any evidence or claim by the petitioner that Judge Arena was in fact biased or prejudiced against the petitioner.

It is important to note what the petitioner does not argue with respect to this claim. The petitioner does not argue that his sentence was illegal because it had been based on improper information within the knowledge of the sentencing judge. Nor does he argue that his trial counsel had been ineffective in failing to move for Judge Arena's disqualification. The petitioner's claim is, rather, that his conviction should be set aside because Judge Arena's active participation in the plea negotiations was a per se violation of Canon 3 (C) (1). We decline to review this claim.

First, this claim bears little, if any, resemblance to the petitioner's claim involving Judge Arena's conduct as the petitioner presented this case to the habeas court and as that court decided the case. In the habeas court, the petitioner's claim regarding Judge Arena's conduct was that his trial counsel had been ineffective in not moving for Judge Arena's disqualification. The petitioner did not claim in the habeas court that, irrespective of Klein's effectiveness, Judge Arena was required to disqualify himself as a matter of law.

Thus, the petitioner's principal claim in this appeal does not present any of the issues that the petitioner submitted to the habeas court for decision. The petitioner has continued the course of appellate advocacy that he began on his direct appeal, namely, shifting the grounds of his claim on appeal when the grounds he had asserted in the trial court proved unavailing. See *State* v. *Safford,* supra, 537 (declining to review petitioner's unpreserved claim because, except in exceptional circumstances, "appellate claims must be the product of trial counsel's efforts, not those of appellate counsel sifting through the record after the fact, trawling for issues undreamt of at trial"). We see no reason in this case to depart from our general rule that legal claims not raised at trial are not cognizable on

appeal. *Miko* v. *Commission on Human Rights & Opportunities,* 220 Conn. 192, 197 n.5, 596 A.2d 396 (1991).

Our refusal to review the petitioner's claim is particularly apt because this is a habeas corpus case. The petitioner pleaded guilty to sexual assault in the first degree and was sentenced in early 1989. His direct appeal was decided in August, 1990. This habeas corpus action was tried in December, 1990, and decided by the habeas court in January, 1991. The petitioner has had, therefore, more than three years, and three opportunities properly to challenge in court Judge Arena's participation in his plea bargain—before Judge Arena himself, before the Appellate Court in his direct appeal, and before the habeas court. Therefore, on this, his fourth opportunity, the petitioner should at least be required to present on appeal the same claims that he presented to the habeas court, rather than presenting yet another appellate afterthought.

Furthermore, the writ of habeas corpus, as a vehicle to challenge a criminal conviction, is reserved for "convictions that violate fundamental fairness." (Internal quotation marks omitted.) *Bunkley* v. *Commissioner of Correction,* 222 Conn. 444, 460–61, 610 A.2d 598 (1992). In order to be successful, a habeas corpus petitioner "must demonstrate a miscarriage of justice or other prejudice and not merely an error which might entitle him to relief on appeal."[12] (Internal quotation marks omitted.) Id., 461. Thus, ordinarily a habeas corpus petitioner must establish some fundamental constitutional violation entitling him to relief. Id. A claim

---

[12] Indeed, we have recently held that *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), and thus by necessary implication, *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989), which permit an appellant under exceptional circumstances to prevail on appeal upon the basis of an unpreserved constitutional trial claim, do not apply to habeas corpus actions. *Johnson* v. *Commissioner of Correction,* 218 Conn. 403, 415–16, 589 A.2d 1214 (1991).

that a judge should not have participated in plea nego-
tiations, based solely upon the appearance of partial-
ity, does not rise to the level of a constitutional
violation. See *Flores* v. *Estelle*, 578 F.2d 80, 85 (5th
Cir. 1978), cert. denied, 440 U.S. 923, 99 S. Ct. 1253,
59 L. Ed. 2d 477 (1979). Nor does it constitute a mis-
carriage of justice, or other prejudice justifying the issu-
ance of a writ of habeas corpus.[13]

## II

The petitioner also claims that the habeas court
improperly concluded that the petitioner's trial coun-

---

[13] Although it should not be necessary to do so, we are constrained once
again; see *Bunkley* v. *Commissioner of Correction*, 222 Conn. 444, 463 n.17,
610 A.2d 598 (1992); to respond to the baseless fear expressed in the con-
curring opinion that we have some unexpressed "true purpose," unex-
pressed "direction" or unexpressed "goal"; see concurring opinion, infra;
to effectuate in some future case an evisceration of the proper use of the
writ of habeas corpus. We do not. Indeed, as the concurring opinion grudg-
ingly acknowledges, our reference to a constitutional violation as a predi-
cate for the issuance of the writ is preceded by the adverb "ordinarily."
Obviously, that does not mean "exclusively," although, as the concurring
opinion also acknowledges, most habeas corpus cases are predicated on con-
stitutional violations, and the writ stands as a bulwark against convictions
that violate "fundamental fairness," a criterion that obviously refers to
the due process clause. Nor, apparently, does the concurring opinion take
issue with the established federal and state precedent that a successful
habeas corpus petitioner "must demonstrate a miscarriage of justice or other
prejudice and not merely an error which might entitle him to relief on appeal.
*Hill* v. *United States*, 368 U.S. 424, 428, 82 S. Ct. 468, 7 L. Ed. 2d 417,
reh. denied, 369 U.S. 808, 82 S. Ct. 640, 7 L. Ed. 2d 556 (1962). *D'Amico*
v. *Manson*, 193 Conn. 144, 156–57, 476 A.2d 543 (1984); see also *Bowers*
v. *Warden*, 19 Conn. App. 440, 441, 562 A.2d 588, cert. denied, 212 Conn.
817, 565 A.2d 534 (1989)." (Internal quotation marks omitted.) *Bunkley*
v. *Commissioner of Correction*, supra, 461. When and if a habeas case arises
where the petitioner has established a miscarriage of justice or other prej-
udice, not involving a constitutional violation but nonetheless requiring the
issuance of the writ pursuant to the law, we will perform our judicial duties
accordingly. In sum, we say what we mean, and have no hidden agendas.
We know what the writ of habeas corpus means. See, e.g., *Phillips* v. *War-
den*, 220 Conn. 112, 595 A.2d 1350 (1991). Gratuitous expressions of con-
cern for what we have not said and do not mean are simply unnecessary.

sel had not rendered ineffective assistance to the petitioner. We disagree.

In this argument, the petitioner swaddles his first claim—that as a matter of law Judge Arena had been disqualified by Canon 3 (C) (1) of the Code of Judicial Conduct from sentencing the petitioner—in the hopeful mantle of a claim of ineffective assistance of counsel. Thus, he argues that, because Judge Arena was per se disqualified by Canon 3, Klein was duty bound to move for Judge Arena's disqualification, despite Klein's belief that, as the petitioner characterizes it in his brief, "it was the best bargain he could get."[14]

The gist of the petitioner's argument is as follows: "Had Judge Arena offered a suspended sentence to a misdemeanor plea, the analysis would not change. The habeas court's determination that counsel was competent clearly rests not on the law but on the success of counsel's performance. Counsel's deal-making ability has no place in the analysis of a court's appearance of partiality. It is axiomatic that the law and Code of Judicial Conduct does not protect the *outcome* of a case, it protects the process." (Emphasis in original.)

Taken at its face value, this argument in support of a claim of ineffective assistance of counsel is almost frivolous. Criminal defendants, the criminal defense bar, the prosecution bar and the bench would be surprised, to say the least, to learn that the sixth amendment guarantee of effective assistance of counsel requires that we ignore the results of counsel's performance on his client's behalf and gauge that performance, not by whether it fell below the standard of reasonableness to the prejudice of the client, but by whether it sufficiently protected the purity of the criminal process.

---

[14] Klein testified in the habeas court that he had wanted Judge Arena to be the sentencing judge "[b]ecause he's the one that offered him what I felt was a low sentence."

They would be equally surprised to learn that, even had Klein been able to secure from Judge Arena a suspended sentence to a misdemeanor plea on the facts of this case, his performance would have been constitutionally deficient.[15]

Viewed more charitably, the petitioner's argument is simply without merit. "Establishing that counsel's performance was deficient requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. *Strickland* v. *Washington,* [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, reh. denied, 467 U.S. 1267, 104 S. Ct. 3562, 82 L. Ed. 2d 864 (1984)]. To demonstrate this the defendant must show that counsel's representation fell below an objective standard of reasonableness. Id., 687–88. In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Id., 688. Judicial scrutiny of counsel's performance must be highly deferential, and courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Id., 689, quoting *Michel* v. *Louisiana,* 350 U.S. 91, 101, 76 S. Ct. 158, 100 L. Ed. 83 (1955), reh. denied, 350 U.S. 955, 76 S. Ct. 340, 100 L. Ed. 831 (1956); see also *Burger* v. *Kemp,* 483 U.S. 776, 788–96, 107 S. Ct. 3114, 97 L. Ed. 2d 639 (1987); *Darden* v. *Wainwright,* 477 U.S. 168, 185–86,

[15] Indeed, we can only imagine this petitioner's reaction had Klein in fact secured such a plea bargain from Judge Arena, but then informed the petitioner that *the petitioner's* constitutional right to the effective assistance of counsel required that his counsel move to disqualify Judge Arena and, therefore, required the petitioner to forfeit the benefit of such a favorable bargain.

106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986); *Aillon* v. *Meachum,* [211 Conn. 352, 357, 559 A.2d 200 (1989)]; *Valeriano* v. *Bronson,* 209 Conn. 75, 86, 546 A.2d 1380 (1988); *Levine* v. *Manson,* 195 Conn. 636, 640, 490 A.2d 82 (1985)." (Internal quotation marks omitted.) *Fair* v. *Warden,* 211 Conn. 398, 403–404, 559 A.2d 1094, cert. denied, 493 U.S. 981, 110 S. Ct. 512, 107 L. Ed. 2d 514 (1989). Gauging Klein's conduct by this standard, we agree with the habeas court that his performance as the petitioner's counsel was not ineffective.

As *State* v. *Niblack,* 220 Conn. 270, 280, 596 A.2d 407 (1991), makes clear, there was no basis for a motion to disqualify Judge Arena.[16] Furthermore, Judge Arena

[16] Lest there be any lingering doubts, however, regarding the propriety of Judge Arena's conduct, we note that we have specifically approved of the procedure followed in reaching a plea agreement where "[t]he judge was responsible for conducting plea negotiations and, if an agreement was reached, for holding a plea and sentencing hearing. If negotiations were not successful, however, a judge who was not involved in the plea negotiations would have presided at trial and pronounced sentence if the defendant were found guilty." *State* v. *Niblack,* 220 Conn. 270, 280, 596 A.2d 407 (1991). That procedure was essentially followed here where, although Judge Schaller conducted the plea proceeding, Judge Arena conducted both the plea negotiations and the sentencing proceeding.

Such a procedure must be distinguished from the situation where the judge who participates in plea negotiations is also responsible for conducting the trial and, therefore, for sentencing the defendant in the event of a conviction. In that situation, the dangers we identified in *State* v. *Gradzik,* 193 Conn. 35, 47, 475 A.2d 269 (1984), are present. Those dangers are that (1) the trial judge's impartiality may truly be compromised by his own perception of "a personal stake in the agreement," resulting in resentment of the defendant who rejects his suggested disposition, (2) the defendant may "make incriminating concessions during the course of plea negotiations," and (3) the trial judge may become or appear to become an advocate for his suggested resolution. Id.

These concerns are not present in a case such as the petitioner's original trial, however, where the presiding judge, without communication to the judge who will conduct the trial, participates in plea negotiations. As long as the defendant is free to reject the plea offer and go to trial before a judge who was not involved in or aware of those negotiations, he is not subject to any undue pressure to agree to the plea agreement, and the impartiality of the judge who will sentence him in the event of conviction after trial is not compromised.

was entitled to take into account the petitioner's other charges in imposing sentence. *State* v. *Huey,* supra, 126–27. Moreover, the petitioner does not challenge Klein's judgment that the sentence suggested by Judge Arena was the best disposition he would have been able to secure for his client. Under these circumstances, the petitioner has not established that Klein rendered him ineffective assistance of counsel.

The judgment is affirmed.

In this opinion PETERS, C. J., CALLAHAN and GLASS, Js., concurred.

BERDON, J., concurring in the result. I write separately because the majority answers in footnote 16, by way of dictum, the very question it declines to consider on appeal because of the petitioner's failure properly to raise the issue before the habeas court. In this footnote, the majority gratuitously claims that the trial court's participation in the plea negotiations was proper.[1] I strongly disagree and must set forth my reasons.

The petitioner's attorney, Gerald Klein, had several discussions with the trial judge, *Arena, J.,* regarding the numerous criminal cases the plaintiff had pending before the trial court. The sentence that was agreed upon in open court by the plaintiff was not recommended by the state's attorney, Herbert Carlson, but was one made by Judge Arena during negotiations in chambers. At the petitioner's sentencing on February 16, 1989, Judge Arena acknowledged that he took "a very active part in all the discussions leading up to the entry of the plea. This court was involved in pretrial discussions I believe commencing last March or

---

[1] My reference to "plea negotiations" encompasses sentence negotiations as well.

April of 1988.''[2] Indeed, the habeas court found that "Judge Arena was *instrumental* in effectuating the bargain that was struck by the state and the defense." (Emphasis added.)

In *State* v. *Fullwood,* 194 Conn. 573, 484 A.2d 435 (1984), this court squarely addressed the issue of the propriety of a trial court's participation in pretrial negotiations that lead to a guilty plea. We framed this "serious question" in *Fullwood* as "whether the trial court undertook an impermissible role when it tried 'to settle this matter.' " Id., 580. We held that if, by that statement, "the court actively participated in the negotiation of a plea bargain, *disqualification would have been required. State* v. *Gradzik,* 193 Conn. 35, 46–47, 475 A.2d 269 (1984). Although we have not adopted the federal rule flatly prohibiting trial judges from any participation in plea bargaining; Fed. R. Crim. Proc. § 11 (e) (1);[3] *our rules of practice expressly authorize the trial judge to do no more than to indicate whether a proposed agreed disposition may be accepted or rejected.* Practice Book §§ 686–707, esp. §§ 694, 706.[4]

---

[2] Judge Arena also noted on the record that "[t]his court was involved in extensive discussions concerning this matter over a long period of time. That started when I was first assigned here in March of 1988. This defendant is familiar with the criminal justice system."

[3] Rule 11 (e) (1) of the Federal Rules of Criminal Procedure provides: "The attorney for the government and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following:

"(A) move for dismissal of other charges; or

"(B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

"(C) agree that a specific sentence is the appropriate disposition of the case. *The court shall not participate in any such discussions.*" (Emphasis added.)

[4] Practice Book § 694 provides: "If a plea agreement has been reached by the parties, which contemplates the entry of a plea of guilty or nolo con-

Active involvement by trial judges in plea negotiations has frequently been criticized. See *United States* v. *Adams,* 634 F.2d 830, 840–41 (5th Cir.); *Frank* v. *Blackburn,* 646 F.2d 873, 880 (5th Cir. 1980), modified in part, 646 F.2d 902 (5th Cir.), cert. denied, 454 U.S. 840, 102 S. Ct. 148, 70 L. Ed. 2d 123 (1981); Wright, Federal Practice and Procedure (Criminal) § 175.1, p. 639 (1982)." (Emphasis added) Id., 580–81; see also *State* v. *Santangelo,* 205 Conn. 578, 585–86, 534 A.2d 1175 (1987) (review of the available record revealed that pretrial conference did not constitute "active participation" and did not require disqualification); J. Bruckman, D. Nash & J. Katz, Connecticut Criminal Caselaw Handbook (1989) pp. 57–58, and cases cited therein. In *Fullwood,* we concluded that the record in that case was inadequate to determine whether there had been "an impropriety." *State* v. *Fullwood,* supra, 581.

The majority summarily disregards this precedent and relies instead on the dictum in *State* v. *Niblack,* 220 Conn. 270, 596 A.2d 407 (1991), to support its unwarranted footnote. The majority's conclusion, however, is unfounded for three primary reasons. First, the dictum in *Niblack* was not supported by any precedent. The only pertinent case cited in *Niblack* was the underlying Appellate Court decision in the present case of *State* v. *Safford,* 22 Conn. App. 531, 537, 578 A.2d 152, cert. denied, 216 Conn. 823, 581 A.2d 1057 (1990). In *Safford,* however, the Appellate Court merely held

tendere, the judicial authority shall require the disclosure of the agreement in open court or, on a showing of good cause, in camera at the time the plea is offered. Thereupon the judicial authority may accept or reject the agreement, or he may defer his decision on acceptance or rejection until there has been an opportunity to consider the presentence report, or he [or she] may defer it for other reasons."

Practice Book § 706 provides: "If the parties reach an agreement which contemplates the entry of a plea of guilty or nolo contendere, they may advise the judicial authority in advance of the plea. The judicial authority may indicate whether he will concur in or reject the proposed disposition."

that the "prohibition against trial judges' participating in plea negotiations is not, in itself, a matter of constitutional law . . . ."[5] Id.

Second, the majority's conclusion does a grave injustice to our holding in *State* v. *Gradzik,* supra, 47. The majority implies that in *Gradzik* we held that the trial court would be disqualified from presiding over the trial *only* in situations where the judge actively participated in unsuccessful plea negotiations. It is impossible to read *Gradzik* in that manner. Rather, *Gradzik* held that a trial judge would not be disqualified merely by advising counsel that if the defendant pleaded guilty, "his violation of probation [a separate pending offense] would be handled either in New Haven where he had been sentenced to probation or in West Haven before the same judge, at the defendant's option." Id., 45. In *Gradzik,* we concluded that "the court's comments regarding the probation violation did not warrant disqualification. These statements occurred during the plea negotiations and appear to be nothing more than an explanation of the procedure for the disposition of the probation violation in the event of a guilty plea. . . . *If the record revealed that the judge had been an active participant in negotiating the plea, we would view this claim differently.* The dangers of such par-

---

[5] Moreover, the facts in *State* v. *Niblack,* 220 Conn. 270, 596 A.2d 407 (1991), are inapposite to the facts in this case. In *Niblack,* the plea agreement was for a sentence term of a fixed number of years. In this case, the plea agreement merely set a cap—that is, a maximum of ten years, execution suspended after five years with four years probation and the right to argue for a lesser sentence, which the petitioner's attorney chose not to exercise. In other words, the "ten years suspended after five" was not a certainty, as the sentence agreement in *Niblack* was. We recognized this distinction just recently when we held that, for purposes of sentence review, a sentence cap is not a plea agreement. In *State* v. *Anderson,* 220 Conn. 400, 406, 599 A.2d 738 (1991), we held that "[a] defendant who reserves the right to argue for a lesser sentence anticipates that he may be able to persuade the court to impose a lesser sentence than that which the state is recommending."

ticipation are obvious. In the first place, judicial participation in plea negotiations is likely to impair the trial court's impartiality. The judge who suggests or encourages a particular plea bargain may feel a personal stake in the agreement (and in the quick disposition of the case made possible by the bargain) and may therefore resent the defendant who rejects his advice. . . . Moreover, the defendant is likely to make incriminating concessions during the course of plea negotiations. . . . In the second place, judicial participation in plea discussions creates a misleading impression of the judge's role in the proceedings. As a result of his participation, the judge is no longer a judicial officer or a neutral arbiter. Rather, he becomes or seems to become an advocate for the resolution he has suggested to the defendant. *United States* v. *Werker,* [535 F.2d 198, 203 (2d Cir.), cert. denied, 429 U.S. 926, 97 S. Ct. 330, 50 L. Ed. 2d 296 (1976)]. *United States* v. *Adams,* [supra, 840–41]. There is nothing in the record, however, to support a conclusion that the trial judge participated in the plea negotiations." (Emphasis added; internal quotation marks omitted.) Id., 46–47.

Lastly, the majority's application of the prohibition against judicial involvement in plea bargaining only where the same judge presides over the trial, overlooks the strong policy reasons for prohibiting such involvement. These reasons are brought to light by the federal system. In that system, plea bargaining practices are governed by rule 11 of the Federal Rules of Criminal Procedure, which was amended in 1974 to include the absolute prohibition against judicial participation in plea negotiations to avoid "the 'chilling effect' such participation might have on a defendant's decision to either accept a plea bargain or go to trial. *Blackmon* v. *Wainwright,* 608 F.2d 183 (5th Cir. 1979) [reh. denied, 611 F.2d 882 (5th Cir. 1980), cert. denied, 449 U.S. 852, 101 S. Ct. 143, 66 L. Ed. 2d 64 (1980)]."

*Frank* v. *Blackburn,* supra, 880; Fed. R. Crim. P. 11 (e) (1).[6] The prohibition against judicial involvement in plea negotiations "is necessarily absolute because of the role required of the judge once an agreement is reached; the court must decide for itself whether to accept or reject the plea bargain." *United States* v. *Adams,* supra, 835.[7]

Thus, when the majority asserts that the prohibition should only apply to judges who participate in the plea negotiations and then conduct the trial and the sen-

[6] See footnote 3, supra.

[7] When a federal circuit sought to interpret rule 11 (e) (1) of the Federal Rules of Criminal Procedure, it turned to the United States Supreme Court's decision in *McCarthy* v. *United States,* 394 U.S. 459, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969) (court held that a defendant whose guilty plea to a tax evasion charge had been taken in a court procedure that did not fully comply with rule 11 was entitled to withdraw his plea without having first to show prejudice). Although the court in *McCarthy* interpreted an earlier version of rule 11, "the application of *McCarthy* to violations of [r]ule 11 (e) (1)'s prohibition of judicial participation in plea discussions is not difficult, at least where the defendant has pled guilty and seeks only to withdraw his plea. That prohibition serves to strengthen the prophylactic scheme established by [r]ule 11 and enforced by *McCarthy,* that is, it helps to insure that involuntary, unknowing and unfounded guilty pleas will not be entered." *United States* v. *Adams,* 634 F.2d 830, 839 (5th Cir. 1981).

"The applicability of *McCarthy* . . . is not, however, so clear where the defendant has in fact pled not guilty and received a full trial. . . . The explicit [r]ule 11 purposes discussed in *McCarthy* do not involve these dangers to defendants who plead not guilty after unsuccessful plea negotiations in which the judge has participated." Id., 840–41. Of course, the federal courts have also held that rule 11 (e) (1) prohibits judicial involvement in plea negotiations where the defendant does, in fact, have a trial. The reasons given for so doing are virtually identical to those discussed by the majority in its footnote 16. See *United States* v. *Adams,* supra; *Frank* v. *Blackburn,* 646 F.2d 873 (5th Cir. 1980), modified in part, 646 F.2d 902 (5th Cir.), cert. denied, 454 U.S. 840, 102 S. Ct. 148, 70 L. Ed. 2d 123 (1981). That scenario, in which the defendant proceeded to trial, has been described as the "reverse side of the coerced plea situation." *Frank* v. *Blackburn,* supra, 893 (Hill, J., dissenting). Although the coerced plea situation was the original catalyst for the prohibition, the federal courts extended the prohibition against judicial involvement to cases where the negotiations are unsuccessful and the defendant goes to trial.

tence, it only tells half the story. The majority fails to acknowledge the inherent dangers present when a defendant *pleads guilty* to an agreement negotiated by the judge—the very danger the federal rule sought to avoid.

There are several reasons for keeping the judge out of any plea negotiations: "(1) judicial participation in the discussions can create the impression in the mind of the defendant that he would not receive a fair trial were he to go to trial before this judge; (2) judicial participation in the discussions makes it difficult for the judge objectively to determine the voluntariness of the plea when it is offered; (3) judicial participation to the extent of promising a certain sentence is inconsistent with the theory behind the use of the presentence investigation report; and (4) the risk of not going along with the disposition apparently desired by the judge may seem so great to the defendant that he will be induced to plead guilty even if innocent." *Frank* v. *Blackburn,* supra, 880.

As the District Court for the Southern District of New York has explained in often quoted language: "The unequal positions of the judge and the accused, one with the power to commit to prison and the other deeply concerned to avoid prison, at once raise a question of fundamental fairness. When a judge becomes a participant in plea bargaining he brings to bear the full force and majesty of his office. His awesome power to impose a substantially longer or even maximum sentence in excess of that proposed is present whether referred to or not. A defendant needs no reminder that if he rejects the proposal, stands upon his right to trial and is convicted, he faces a significantly longer sentence. One facing a prison term, whether of longer or shorter duration, is easily influenced to accept what appears the more preferable choice. Intentionally or otherwise, and no matter how well motivated the judge

may be, the accused is subjected to a subtle but power-ful influence." *United States ex rel. Elksnis* v. *Gilli-gan,* 256 F. Sup. 244, 254 (S.D.N.Y. 1966).

The court in *United States ex rel. Elksnis* goes on to state that "[t]he judge stands as the symbol of even-handed justice, and none can seriously question that if this central figure in the administration of justice promises an accused that upon a plea of guilty a fixed sentence will follow, his commitment has an all-pervasive and compelling influence in inducing the accused to yield his right to trial." Id.

Judicial participation in plea bargaining is a serious concern. Many defendants perceive or are led to believe that if the "deal" offered or suggested by the presid-ing judge is not accepted and if he or she is ultimately convicted, then the sentencing judge, although not the same one as the negotiating judge, will "throw the book" at him or her by imposing a much harsher sen-tence. In this case, on the basis of the representations made by the petitioner's trial counsel, it appears that this scenario transpired.[8] At the habeas hearing, trial counsel testified that he had advised the petitioner to accept Judge Arena's plea offer because "a jury might

---

[8] The following is what transpired at the habeas hearing between the peti-tioner's trial counsel, Gerald Klein, and the petitioner's habeas corpus coun-sel, Karen Goodrow:

"[Goodrow]: . . . What, if any, advice did you give him with regard to entering a guilty plea?

"[Klein]: Well, I told him that a jury might very well find him guilty and I told him about [a particular judge] and I told him the type of sentence that he could expect if he [was] convicted.

"Q. And is it fair to say that [this judge] would have sat on the trial, had he had a criminal trial?

"A. That's what I was told by the state's attorney and Judge Arena, that it had been assigned to [this particular judge], although we were picking a jury with Judge Schaller.

"Q. And what did you tell him with regard to [this judge]?

"A. That I thought he'd get a very, very long sentence."

very well [have found] him guilty and I [had] told him about [a certain judge] and I [had] told him the type of sentence that he could expect if he were convicted." He testified that he had been told by the state's attorney and Judge Arena that this other judge would have presided over the petitioner's trial. The petitioner's attorney also testified that he had told the petitioner that, if convicted, the judge who was to be assigned to the case would have given the petitioner "a very, very long sentence." That the petitioner had this perception should alone be sufficient to condemn this practice in Connecticut of allowing active participation by judges in plea negotiations.

I recognize that there is a need for the trial court to *facilitate* reasonable agreements between the state's attorney and the defendant. That need, however, can be met without allowing trial judges actively to participate in the negotiations because doing so jeopardizes the integrity of the judicial process. Under standard 14-3.3 of the American Bar Association Standards for Criminal Justice (1986), if the judge agrees to participate in plea discussions, he or she "shall serve as a moderator in listening to their respective presentations concerning appropriate charge or sentence concessions. Following the presentation of the parties, the judge may indicate what charge or sentence concessions would be acceptable or whether the judge wishes to have a preplea report before rendering a decision. The parties may thereupon decide among themselves, outside of the presence of the court, whether to accept or reject the plea agreement tendered by the court. . . . All discussions at which the judge is present relating to plea agreements should be recorded verbatim and preserved, except that for good cause the judge may order the transcript of [the] proceedings to be sealed. Such discussions should be held in *open court* unless good cause is present for the proceedings to be held

in chambers. Except as otherwise provided in this standard, the judge should never through word or demeanor, either directly or indirectly, communicate to the defendant or defense counsel that a plea agreement should be accepted or that a guilty plea should be entered." (Emphasis added.) If no agreement is reached, or if subsequent events require the withdrawal of the plea, the facilitating judge must disqualify himself or herself.

The commentary enunciated the reason for the open, recorded negotiation session as follows: "Normally . . . a judge should not allow plea discussions in which he or she is involved to take place in chambers. The judge is the ultimate dispenser of justice, and justice should be publicly done. In rare situations where full public disclosure would not be in the interests of justice, for example, where it would jeopardize ongoing police investigations or where it would force disclosure of an informant's identity, the judge may permit discussions to take place in chambers." III A.B.A., Standards for Criminal Justice, c.14, Pleas of Guilty, standard 14-3.3 (c) through (f), commentary.

The commentary to the A.B.A. standards further states that "[t]hese standards do not suggest that the court should play the role of active bargainer. Instead, paragraph (c) states that the judge 'shall serve as moderator,' and paragraph (f) admonishes that the judge 'should never through word or demeanor, either directly or indirectly, communicate to the defendant or defense counsel that a plea agreement should be accepted or that a guilty plea should be entered.' " Id.

Appropriately, the standards attempt to stake out a middle ground between an absolute prohibition against judicial participation and unfettered judicial involvement in a process best left to the parties. Clearly, the standards are consistent with our present

rules of practice. Practice Book §§ 686 through 707. This court, therefore, should be guided by the standards set by the American Bar Association as to the judge's participation in the plea negotiations. Accordingly, I disagree with the dicta in footnote 16 of the majority opinion.

Finally, I feel compelled once again to express my concern on the direction of the majority with regard to the future of the great protector of liberty—the writ of habeas corpus.[9] In *Bunkley* v. *Commissioner of Correction*, 222 Conn. 444, 467 n.1, 610 A.2d 598 (1992), I wrote of that concern as follows: "I fear that the true purpose of . . . [the majority's] dicta is the beginning of an assault on the writ of habeas corpus as a vehicle for justice." In *Bunkley*, the majority wrote that the writ was reserved for "convictions that violate fundamental fairness"; (internal quotation marks omitted) id., 460–61; but today, the majority elevates that dicta to a requirement that the petitioner must ordinarily "establish some fundamental constitutional violation . . . ."

We have never held before that the "great writ of liberty," which has its roots in the Magna Carta, is ordinarily reserved for a conviction that involves a constitutional violation. Rather we have held that the special and extraordinary legal remedy is for a "miscarriage of justice or other prejudice." *D'Amico* v. *Manson*, 193 Conn. 144, 156, 476 A.2d 543 (1984). Although most cases are predicated on constitutional violations, I am unwilling to circumscribe the writ of habeas corpus as

---

[9] Although not completely reassured, I am pleased to read that the majority, in footnote 13 of its opinion, acknowledges that the writ of habeas corpus is not limited to constitutional violations but is also a remedy for a " 'miscarriage of justice or other prejudice.' " *Bunkley* v. *Commissioner of Correction*, 222 Conn. 444, 461, 610 A.2d 598 (1992). When, however, the availability of the "great writ of liberty" is qualified in any manner that is not recognized by our law, I will continue to speak out, as it is my obligation to do so.

the majority suggests. See General Statutes § 52-466. Justice Charles Evans Hughes wrote over fifty years ago that "[i]t must never be forgotten that the writ of habeas corpus is the precious safeguard of personal liberty and there is no higher duty than to maintain it unimpaired." *Bowen* v. *Johnston,* 306 U.S. 19, 26, 59 S. Ct. 442, 83 L. Ed. 455 (1939). The writ of habeas corpus " 'holds an honored position in our jurisprudence . . . [as] a bulwark against convictions that violate "fundamental fairness." ' " *Gaines* v. *Manson,* 194 Conn. 510, 516, 481 A.2d 1084 (1984), quoting *Engle* v. *Isaac,* 456 U.S. 107, 126, 102 S. Ct. 1558, 71 L. Ed. 2d 783, reh. denied, 456 U.S. 1001, 102 S. Ct. 2268, 73 L. Ed. 2d 1296 (1982).

What is particularly troubling to me is that the majority, in order to achieve its goal, appears to use dicta and cases that are inapposite to proclaim eventually for a future case that its holding is based upon rock solid precedent. This is why I believe it is necessary to answer the dicta of the majority concerning the trial judge's participation in the plea negotiations, as well as its seemingly innocuous reference to the writ of habeas corpus.

Because I agree with the majority that the issue regarding the trial judge's participation in plea negotiations as a per se violation of the cannon of judicial conduct was not raised before the habeas court, I concur in the result. I also agree that the remaining claims of the petitioner are without merit.