[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a habeas corpus action wherein the petitioner CT Page 11168 alleges, in separate counts, that his trial counsel provided ineffective assistance at his trial which resulted in the petitioner's conviction on charges of Assault First Degree of a victim sixty or older, Connecticut General Statutes53a-59a, and Robbery Second Degree, Connecticut General Statutes Section 53a-135; that his appellate counsel rendered ineffective assistance on his appeal; and that the petitioner was denied due process for a variety of reasons.
At the habeas hearing this court dismissed the third count of the amended petition because the "cause and prejudice" grounds alleged therein to justify not raising these issues on direct appeal were insufficient to excuse that failure and for failure to allege "no deliberate bypass" of the direct appeal process.
The petitioner was convicted of felony murder at an earlier jury trial which concluded on March 2, 1983, some six months previous to the trial which is the subject of this habeas action. Judge Thomas Corrigan presided over that earlier trial and, on April 14, 1983, sentenced the petitioner to the maximum sentence of sixty years confinement. During that sentencing hearing Judge Corrigan explained his reasons for imposing this sentence on the petitioner which reasons included the Judge's conclusions that the petitioner lacked remorse for the killing, that the beating which resulted in the victim's death was cruel and brutal, that the petitioner attempted to evade conviction by means of fabrication and perjury, and the absence of any cooperation with law enforcement authorities by the petitioner (Petitioner's Exhibit L, pp. 19 through 21).
Judge Corrigan was also assigned to preside over the petitioner's subsequent jury trial, which trial is the subject of the present action (Petitioner's Exhibit B). On June 1, 1983, as jury selection was about to begin for the latter trial, the petitioner engaged in a tirade against Judge Corrigan addressing him with a barrage of vile language (Petitioner's Exhibit C, pp. 13 through 18). During this outburst the petitioner vented his anger toward the judge for having imposed such a severe sentence on him. At a later time the petitioner apologized to the judge for this outburst, and the judge accepted the apology (Petitioner's Exhibit E, pp. 6 and 7). CT Page 11169
After the jury was selected but before the jury was sworn in, the petitioner's public defender, Carl Eisenman, who had also represented him at his earlier trial, orally informed the court that the petitioner requested that Judge Corrigan disqualify himself because he had presided over the previous trial and sentenced the petitioner (Petitioner's Exhibit E, pp. 2 and 3). Judge Corrigan stated he was unaware of any prejudice on his part toward the petitioner generated by the Judge's participation in the earlier proceeding (Petitioner's Exhibit E, p. 31). Attorney Eisenman responded that he also knew of nothing that occurred at the previous trial which would justify disqualification, but he had raised the issue at the petitioner's request (Petitioner's Exhibit E, pp. 3 and 4). The judge denied the request for recusal (Petitioner's Exhibit E, p. 4).
At the latter trial the State filed a "long form" Information which was read to the jury before the taking of evidence (Petitioner's Exhibit E, pp. 7 through 9). The three counts of this substituted Information each included language that the victim, William McGee, had been assaulted and robbed while he was praying in a pew in St. Joseph's Cathedral in Hartford. Attorney Eisenman did not move to strike this language from the substituted Information.
Also, in his charge to the jury the judge did not expressly instruct the jurors that this Information was not, in itself, evidence. Trial counsel did not except to this omission in the instructions. During deliberations the jury requested that it be given a copy of the pertinent statutes (Petitioner's Exhibit H, p. 33). The trial judge denied this request and explained, among other things, that the State was limited to the allegations contained in the substituted Information and that the jurors should refer to that document to find the relevant statutory language (Petitioner's Exhibit H, pp. 33 and 34).
On June 20, 1983, the jury found the petitioner guilty of being an accessory to Assault of a person sixty or older in the First Degree and Robbery Second Degree and not guilty of Assault First Degree. On September 6, 1983, Judge Corrigan sentenced the petitioner to a total effective sentence, on this new conviction, of twenty years, consecutive to the sixty years the petitioner was then serving. CT Page 11170
The petitioner's conviction of felony murder was upheld on appeal, State v. Simms, 201 Conn. 395 (1986); as was his conviction at the latter trial, State v. Simms, 14 Conn. App. 1
(1988), affm'd 211 Conn. 1 (1989). The sole issue raised in the appeal at the second trial questioned the admissibility of the transcript of an alleged co-participant's guilty plea.
 I
In the first count of the amended petition, the petitioner asserts that he was denied his constitutional right to effective assistance of trial counsel because Attorney Eisenman failed to move to strike the language "praying in a pew" from the substituted Information which document was eventually read and submitted to the jury; failed to argue the motion to disqualify the trial judge adequately; and failed to take exception to the absence of an express instruction that the Information was not evidence coupled with the trial court's purportedly improper response to the jury's request for a copy of the statutes. The amended petition also alleges other deficiencies which were either not pursued at the habeas proceeding or briefed, and the court considers these other claims abandoned.
The court first considers the petitioner's claim that trial counsel provided ineffective assistance by inadequately presenting and arguing the motion to disqualify the trial judge. When a habeas petitioner complains of ineffectiveness of counsel's assistance, he must demonstrate that his attorney's representation fell below an objective standard of reasonableness, Johnson v. Commissioner, 218 Conn. 403
(1991), p. 425. This reasonableness standard is gauged by prevailing professional norms, Ibid. The attorney's conduct is evaluated from that attorney's perspective at the time of the trial, Ibid.
The petitioner introduced no expert testimony with respect to prevailing professional norms applicable to a decision not to pursue the petitioner's challenge to the trial judge. Rather, the petitioner relies on the fact that trial counsel conceded, in effect, that the request was without merit, and that this conduct establishes the deficiency without the need for expert testimony. CT Page 11171
Trial counsel testified that he felt the only colorable ground for disqualification was that Judge Corrigan practices the same religion as those who worship in St. Joseph's Cathedral. Trial counsel also felt that this ground was insufficient to warrant recusal and that he knew of no other meritorious ground to substantiate the request. He related the petitioner's desire to the court but acknowledged the fact that Judge Corrigan had presided over the earlier trial and sentenced the petitioner did not strike him as a basis to believe any prejudice existed. Trial counsel concluded that because Judge Corrigan was not going to be the trier-of-fact at either trial and because he perceived no bias or prejudice as a result of the earlier trial, the request for recusal was without merit.
The court's research discloses three Connecticut cases which deal directly with this issue. The first is State v. Kohlfuss, 152 Conn. 625 (1965). In that case the trial judge held a court trial and found the defendant guilty of breaking and entering. As it turned out, a few years earlier the trial judge had sat on a sentence review panel which considered the same defendant's application to review his prison sentence for a robbery conviction. The panel not only declined to reduce the defendant's original sentence but, in fact, increased his minimum sentence by one year. Our Supreme Court affirmed the later conviction holding, in part, that the fact that the trial judge increased the defendant's earlier sentence did not disqualify him from sitting as the trier-of-fact in a subsequent trial of the same party, Ibid., p. 630.
In State v. Schafer, 5 Conn. Cir. 669 (1969), the defendant moved to disqualify the judge assigned to preside over his jury trial on a criminal charge. The claimed basis for disqualification was that, fifteen years earlier, the trial judge had been a member of a parole board which had ruled adversely to the same individual's request for parole. At that parole hearing the individual had expressed himself in a fashion likely to develop animosity toward himself by the board members. The Appellate Session held that the trial judge's previous participation in the unsuccessful parole hearing did not provide any statutory or other substantial ground to disqualify the trial judge, Ibid, p. 674. CT Page 11172
The third case is State v. Santangelo, 205 Conn. 518
(1987), a case which postdates the petitioner's trial. In that case the defendant moved to have the trial judge disqualify himself from sentencing the defendant claiming a lack of impartiality on the judge's part. The defendant contended that the imposition of the maximum incarceration for murder manifest the appearance of partiality. Our Supreme Court rejected this contention stating that the fact that a trial court rules adversely to a defendant does not demonstrate an appearance of bias, Ibid, p. 602. Although that case was decided after the trial in the present case, its holding supports Attorney Eisenman's evaluation that the petitioner's request was legally unsupportable.
The petitioner's oral argument and brief cites no Connecticut case which indicates that the fact that a trial judge imposes a lengthy sentence in an earlier case provides reasonable grounds for challenging the propriety of that same judge presiding over a later jury trial of the same party. The petitioner has cited cases from other jurisdictions which may be regarded as supporting such a principle. However, there was no evidence adduced that the prevailing professional norm in Connecticut, at the time of the petitioner's trial, would require trial counsel to urge recusal based on these extra-territorial cases.
The issue is not whether trial counsel could have done a better job, but whether he rendered reasonably effective assistance, Quintana v. Warden, 220 Conn. 1 (1991), p. 5. Reasonably effective assistance means "reasonableness under prevailing professional norms," Ibid, p. 6. As noted above no expert testimony with respect to these norms pertaining to this issue was presented.
Trial counsel testified that he did not aggressively pursue the request because he felt that the request had little merit, a jury would be deciding the case, and such an aggressive pursuit might upset or alienate the judge. "Judicial scrutiny of counsel's performance must be highly deferential, and courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy," Safford v. Warden, 223 Conn. 180 (1992), p. 193. CT Page 11173
To pursue a perceived weak claim may create more harm than benefit. The loss of credibility such an action may induce can spill over to cloud a stronger claim later. The mental clutter caused by raising every conceivable claim may cause a meritorious claim to become lost. The constitutional right to a competent attorney does not demand that counsel will recognize and raise every conceivable constitutional claim, Johnson v. Commissioner, supra, p. 425. A trial attorney must choose his battles and sometimes he will choose not to pursue a confrontation that seems unlikely to succeed. Given the lack of expert testimony as to prevailing professional norms and the presumption that counsel's actions might be considered sound trial strategy, the court cannot find that the petitioner has met his burden of proving that he was denied effective assistance of counsel as to this issue.
 B
The petitioner also alleges that trial counsel was ineffective by failing to move to strike "highly prejudicial surplusage" from the substituted Information, viz. "praying in a pew,"; in failing to except to the trial judge's failure to instruct the jury that the Information was not, itself, evidence; and in failing to except to the trial judge's purportedly improper response to the jury's request for a copy of the pertinent statutes.
Our Supreme Court has adopted a two-pronged test for ineffectiveness claim, Ostolaza v. Warden, 26 Conn. App. 758
(1992), p. 761. The petitioner must demonstrate not only that his counsel's performance was deficient and that counsel was not acting as counsel, but also that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different, Ibid.
Because discussion of the second, or prejudice, prong of the petitioner's burden is dispositive, the court now addresses that issue. Assuming, arguendo, that trial counsel was deficient in not moving to strike the words "praying in a pew" from the substituted Information, it is difficult to see how the petitioner was prejudiced by this conduct. In essence, the same information came to the jury's attention as CT Page 11174 part of the evidence in the case.
Detective Malcolm testified that a co-participant told him that the victim of the alleged charges was "kneeling in the pew" in the cathedral when he was mugged (Petitioner's Exhibit G, p. 17). The victim himself testified that he was "kneeling in the church" when his assailant shoved him "under the pew" (Petitioner's Exhibit E, p. 18). The victim again affirmed that the mugging took place in a pew later in his testimony (Petitioner's Exhibit E, p. 48). Also, the victim identified the pew area in which he was attacked during the showing of a videotape of the interior of the cathedral (Petitioner's Exhibit E, pp. 56 and 57).
This evidence clearly brought before the jury the same facts as alleged in the portion of the substituted Information which is the subject of the petitioner's attack. The court concludes that the presence of the phrase "praying in a pew" created no added prejudicial impact. The distinction the petitioner makes between "praying in a pew" and "kneeling in a pew" is diaphanous. Any reasonable juror would properly infer that, when the victim was kneeling in the pew, he was engaged in worship and not some secular activity.
The petitioner's claim that he was prejudiced by the omission of the trial judge to state expressly that the substituted Information was not, itself, evidence is likewise without merit. The trial judge instructed the veniremen that the fact of arrest and prosecution ought not influence them if selected to decide the case (Petitioner's Exhibit C, p. 20), and that any verdict reached must be based solely on the evidence produced during the trial (Petitioner's Exhibit C, p. 22). This admonition was reiterated for the veniremen during the jury selection process (Petitioner's Exhibit C, p. 31).
Before the taking of evidence began, the judge explained to the jurors that the Information was a charging document (Petitioner's Exhibit E, p. 7). After the Information was read to the jury by the clerk, the clerk announced that they would then attend to the evidence (Petitioner's Exhibit E). The trial judge further explained that a document does not become evidence until it is marked as a full exhibit (Petitioner's Exhibit E, p. 20). The Information was never CT Page 11175 marked as an exhibit.
During his charge to the jury, the judge made multiple references to the "exhibits and Information," thus pointing out the distinction between the Information and the evidence in the case (Petitioner's Exhibit H, pp. 14, 29, 30, 34 and 36). In these instruction the trial judge also stressed that the petitioner had no burden arising from being charged with a crime (petitioner's Exhibit H, pp. 8 and 9), and that the Information was the charging document (Petitioner's Exhibit H, p. 14).
The petitioner argues that the impact of the above omission was enhanced by the trial court's instruction to the jury that they could not receive a copy of the statutes but should look to the Information for the pertinent statutory language. These claims of prejudice are speculation. The number of times the trial judge distinguished the other exhibits from the Information, the lack of marking of the Information as an exhibit and the explanations that the Information was the charging instrument belies any likelihood that the jury mistook the Information as evidence that the petitioner committed the offenses charged therein.
The court finds that the petitioner has failed to meet his burden of proving that there exists a reasonable probability that, but for the supposed unprofessional errors, the result of his jury trial would have been different.
 II
In the second count of the amended petition the petitioner asserts that he was deprived of his constitutional right to effective appellate counsel. He claims that Attorney Suzanne Zitser, his appellate public defender, failed to raise on appeal the same issues trial counsel failed to pursue at the trial level. Again claims not pursued at the hearing and in the petitioner's brief are considered abandoned.
 A
For the reasons stated in section I, A of this memorandum appellate counsel was not deficient for raising the issue of judicial disqualification on appeal. She also CT Page 11176 had the added reason that trial counsel's position on the request may have constituted a waiver of the issue. Similarly, no expert testimony was adduced as to any violation of the prevailing professional norms for appellate counsel with respect to this issue, and the court concludes that the petitioner has failed to prove appellate counsel was deficient in not raising this issue on appeal.
 B
As to the remaining issues with respect to appellate counsel, it should be noted that in Bunkley v. Commissioner,222 Conn. 444 (1992), our Supreme Court held that a petitioner must establish not only that the appeal probably would have been decided differently but that the underlying trial would have been decided differently but for appellate counsel's deficiencies, Ibid, p. 454. Having found that the petitioner failed to meet this burden for trial counsel's purported omissions, the court similarly concludes that the petitioner has failed to meet this burden with regard to the identical claims as to appellate counsel.
For the reasons stated above the petition is dismissed.
BY THE COURT,
Hon. Samuel J. Sferrazza Superior Court Judge