[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner, Salvatore Annunziata, alleges in his Amended Petition that he was denied the effective assistance of counsel at the trial level in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 8 of the Connecticut Constitution.
The ineffective assistance claims against the petitioner's trial counsel are threefold: 1) that counsel coerced him into entering guilty pleas under Alford[1] by telling the petitioner that he would only serve ten (10) years of the sentence; 2) that counsel failed to conduct a proper investigation that could have led to the impeachment of the State's chief witness; and 3) that counsel deprived the petitioner of the opportunity to submit alibi evidence by refusing to ascertain the time of death of the victim. Petitioner's Amended Petition at 2.[2] These alleged errors, according to the petitioner, fell below the range of competence displayed by lawyers with ordinary training and skill in criminal law. Lastly, the petitioner claims that but for trial counsel's acts and omissions, the petitioner would not have entered into the plea agreement and would have exercised his right to trial.
A trial on the merits was conducted, during which the Court heard testimony from the petitioner as well as his former trial counsel, John F. Kavanewsky, Jr.[3] For the reasons that follow, the Court concludes that the claims raised by the petitioner are without merit. The petition for a writ of habeas corpus, therefore, is denied.
 INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD
"What constitutes effective assistance of counsel cannot be determined with yardstick precision, but necessarily varies according to the unique circumstances of each representation. The habeas court may not indulge in hindsight to reconstruct the circumstances surrounding the challenged conduct, but must evaluate the acts or omissions from trial counsel's perspective at the time of trial." (Internal citation omitted.) Beasleyv. Commissioner of Correction, 47 Conn. App. 253, 264, 704 A.2d 807
CT Page 5396 (1997), cert. denied, 243 Conn. 967, 707 A.2d 1268 (1998).
"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of the conviction has two components. First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that the deficient performance prejudiced the defense. Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. Stricklandv. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, reh. denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984); Aillon v.Meachum, 211 Conn. 352, 357, 559 A.2d 206 (1989); Fair v. Warden,211 Conn. 398, 402, 559 A.2d 1094, cert. denied, 493 U.S. 981,110 S.Ct. 512, 107 L.Ed.2d 514 (1989)." Henry v. Commissioner of Correction,60 Conn. App. 313, 316-7, ___ A.2d ___ (2000).
"The first component, generally referred to as the performance prong, requires that the petitioner show that counsel's representation fell below an objective standard of reasonableness. In Strickland, the United States Supreme Court held that judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a petitioner to second guess counsel's assistance after a conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense, after it has proven unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of an attorney's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances to counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable and professional judgment.
"Even if a petitioner shows that counsel's performance was deficient, the second prong, or prejudice prong, requires that the petitioner show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In the context of a guilty plea, our Supreme Court has stated [that] the petitioner must show that such a decision to plead not guilty would have been based on the likelihood that the introduction of the evidence for the defense that was not identified CT Page 5397 because of ineffective assistance of counsel would have been successful at trial. The United States Supreme Court stated that in many guilty plea cases, the prejudice inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate the determination whether the error prejudiced the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the prejudice inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." (Emphasis in original.) (Internal citations and quotations omitted.) Id., 317-8.
"Although Strickland applies generally to the evaluation of whether ineffective assistance of counsel during criminal proceedings has infringed on a petitioner's constitutional rights, the United States Supreme Court has articulated a modified prejudice standard for cases in which the conviction has resulted from a guilty plea. See Hill v.Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Hill
requires the petitioner to demonstrate that he would not have pleaded guilty, that he would have insisted on going to trial, and that the evidence that had been undiscovered or the defenses he claims should have been introduced were likely to have been successful at trial." Copas v.Commissioner, 234 Conn. 139, 151, 662 A.2d 718 (1995).
"In Hill v. Lockhart, the court determined that the same two-part standard applies to claims arising from the plea negotiation process and that the same justifications for imposing the prejudice requirement inStrickland were relevant in the context of guilty pleas. Although the first half of the Strickland test remains the same for determining ineffective assistance of counsel at the plea negotiation stage, the court modified the prejudice standard. As in Strickland, the prejudice standard for plea negotiations is intended to determine whether, but for counsel's constitutionally deficient performance, the outcome of the plea process would have been different. The court went on to require that in order to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.
"The Hill court also stated that the petitioner must show that such a decision to plead not guilty would have been based on the likelihood that the introduction of the evidence or the defense that was not identified CT Page 5398 because of ineffective assistance of counsel would have been successful at trial. The court stated that in many guilty plea cases, the prejudice inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate the determination whether the error prejudiced the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the prejudice inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." (Internal citations and quotations omitted.) Id., 156-7.
"A reviewing court can find against the petitioner on whichever [Strickland prong] is easier. Valeriano v. Bronson, 209 Conn. 75, 85-6,546 A.2d 1380 (1988); Nardini v. Manson, 207 Conn. 118, 124, 540 A.2d 69
(1988); Magnotti v. Meachum, 22 Conn. App. 669, 674, 579 A.2d 553
(1990); Beasley v. Commissioner of Correction, [supra, 47 Conn. App. 264]."Petaway v. Commissioner of Correction, 49 Conn. App. 75, 76 n. 2,712 A.2d 992 (1998).
 CLAIM OF COERCED ALFORD PLEAS
The first claim made by the petitioner is that his trial counsel coerced him into entering the Alford pleas by telling him that he would only serve ten (10) years of the sentence. A review of the record as well as the testimony elicited at the habeas corpus trial, however, supports the conclusion that this claim is wholly without merit.
The petitioner was arrested March 15, 1988, on a warrant for a charge of murder in violation of General Statutes § 53a-54a. Subsequently, the petitioner was also charged with one count of conspiracy to commit murder in violation of General Statutes § 53a-48. The petitioner pleaded "not guilty" to both charges on May 4, 1988, and entered jury election at that time. On November 17, 1988, the pleas on both counts were changed to "guilty" under Alford. The petitioner was sentenced (Damiani, J.) on November 25, 1988, to forty (40) years for the murder count and twenty (20) years for the conspiracy count, both to be served concurrent with each other, resulting in a total effective sentence of forty (40) years. Petitioner's Exhibit A.
The canvass of the petitioner at the time the pleas were changed CT Page 5399 indicates that the Court (McKeever, J.) questioned the petitioner in the presence of his counsel as follows:
 THE COURT: There are several questions that I am going to ask you and I want the answers loud and clear for the record.
THE DEFENDANT: Yes, Sir.
 THE COURT: If you don't understand the question, inquire of me. The answers have to come from you not from your attorney.
THE DEFENDANT: Yes, Sir.
 THE COURT: Anything you don't understand, tell me and I will rephrase the question. Have you discussed your guilty plea with your attorney?
THE DEFENDANT: Yes.
 THE COURT: Has he had time to explain and has he in fact explained to you all of the elements which go to make up the crimes to which you have just pleaded?
THE DEFENDANT: Yes.
 THE COURT: Are you satisfied with the advice and assistance you have received from your counsel?
THE DEFENDANT: Yes.
...
 THE COURT: Have any threats or promises been made to induce you to plead guilty whereas you might not otherwise have done so?
THE DEFENDANT: No.[4]
The Assistant State's Attorney then recited the evidence the State would have offered in support of the charges, at the onset stating that "Since this is an Alford plea, my factual accounting will be a little more detailed." Nov. 17, 1988 Tr. at 4.
 The Court's questioning continued after the colloquy: CT Page 5400
 THE COURT: You heard the statement of facts as given by the prosecuting attorney. You heard him describe the agreement or the conspiracy and heard him describe the murder. You understand that those are the crimes —
THE DEFENDANT: Yes.
 THE COURT: — to which you have just pleaded guilty?
THE DEFENDANT: Yes.
 THE COURT: Now, you have indicated to me that your attorney has explained the elements of each crime. I assume, counsellor, [counselor], that that is an accurate statement?
MR. KAVANEWSKY: Yes, Sir.
...
 THE COURT: Do you understand that you have pleaded guilty to murder which is a class A felony, the minimum penalty for which is twenty-five years and the maximum penalty for which is life, which is taken to mean sixty years in Connecticut? And, that you pleaded guilty to conspiracy to commit murder which is a class B felony, the maximum penalty for which is twenty years, so that you have, in effect, by your guilty plea subjected yourself to not less than twenty-five years of incarceration and not more than eighty years of incarceration? Do you understand that?
THE DEFENDANT: Yes.
...
THE COURT: And, will there be a recommendation?
 MR. BENEDICT: It is my understanding the agreed-upon sentence here is forty years and that contemplates Mr. Annunziata, I think all parties agree to this, having started serving that sentence in effect on the day of his arrest of this charge[.] CT Page 5401
 THE COURT: Mr. Kavanewsky, is that your understanding of the agreement?
MR. KAVANEWSKY: Y[es]. . . .
...
 THE COURT: Mr. Annunziata, you heard what the prosecutor just stated. Is that your understanding of the agreement, also?
THE DEFENDANT: Yes.
...
 THE COURT: . . . Do you understand that the sentencing judge, whomever that might be, and as of right now it is anticipated that it will be Judge Damiani, but it could be any other sentencing judge, do you understand that any agreement made by and between you and counsel and the prosecuting attorney is not binding upon the sentencing judge? That if the sentencing judge should feel for any reason whatever that forty years is not an adequate term of incarceration or for any other reason does not want to accept the recommendation of a forty year sentence, you have no vested right to that sentence? Your only right at that time would be to withdraw you guilty pleas and proceed to trial?
THE DEFENDANT: Yes, Sir.
 THE COURT: Are you pleading guilty voluntarily under the Alford doctrine in anticipation of the forty year sentence whereas it is possible that had you elected to proceed to trial on these two charges alone, you could have received eighty years?
THE DEFENDANT: Yes, Sir.
...
 THE COURT: Are there any questions you wish to direct to me?
THE DEFENDANT: No, Sir. CT Page 5402
 THE COURT: Is that because you fully understand everything we have done here this morning?
THE DEFENDANT: Yes, Sir.
...
 THE COURT: Does either counsel know of any reason why I should not accept [the] guilty pleas?
MR. BENEDICT: No, your Honor.
Mr. KAVANEWSKY: No, your Honor.
 THE COURT: Having heard all of the foregoing, is it your desire now to have me accept your guilty pleas?
THE DEFENDANT: Yes.
 THE COURT: Findings of guilty may enter. The Court will make the further finding that the defendant has pleaded guilty knowingly, voluntarily and intelligently upon effective advice of counsel with full knowledge of the crimes with which he stands charged and the consequences of his plea in each case and that based on the evidence the State's Attorney's Office anticipated proving at trial there is strong evidence of the defendant's guilt. The evidence of the defendant's guilt which the court would consider to be very strong, of course, in addition to his own statement [to Bridgeport detectives on March 15, 1988,][5] is the fact that the victim was known to the defendant. His claim that he never intended to kill the victim but only to inflict serious physical injury makes absolutely no sense to the Court in that the defendant or the victim knew and could immediately have caused the defendant's arrest for assault, if assault had been intended at the time.
 Sentence is set down for a week from Friday which will be the 25th of November. Again, I reiterate for the record it is the intent of the Court that the sentence when given and if given is to be an effective forty years[.][6]
CT Page 5403 At the habeas corpus trial, the petitioner testified on direct examination that he and his trial counsel had numerous discussions about pleading out; that he had turned down several offers to testify as a State's witness in the proceedings against the co-defendant, Harry Johnson; that he had lied under oath in State v. Johnson, the prosecution of the co-defendant, so as to protect the co-defendant; and that he had a conversation with his trial counsel approximately one month prior to sentencing, during which the petitioner alleges that trial counsel indicated to him that he would have ten (10) years to serve on his sentences.[7]
The petitioner's trial counsel testified that at the time he represented the petitioner in the underlying criminal matter, that his practice comprised approximately 25% criminal work. After appointment as special public defender in this case, Attorney Kavanewsky represented the petitioner at the probable cause hearing. Attorney Kavanewsky subsequently filed numerous standard pre-trial motions on May 26, 1988, including three motions to suppress.[8] The denial of the motion to suppress, according to trial counsel, changed the nature of the case and led to the change of pleas. Lastly, trial counsel testified that he did not — and would not — state to his client that he would receive ten years to serve, for that term was too far from the forty-year sentence offered by the State in the plea agreement.[9]
"All of the circumstances surrounding the entry of the guilty plea in court should be considered in determining the voluntariness of the plea. The presence of counsel at the time when the plea of guilty was entered militates strongly against a conclusion that the plea was involuntary."Williams v. Reincke, 157 Conn. 143, 148, 249 A.2d 252 (1968).
Upon review of the canvass the petitioner received, as well as the testimony by both the petitioner and his trial counsel, this Court finds that the petitioner's claim that he was coerced into pleading guilty is completely unsubstantiated. As the transcript of the canvass clearly indicates, there is not a single indication that the guilty pleas were anything but knowing, voluntary, intelligent, and with the effective advice of counsel. "There is nothing in the record or in the. [petitioner's] testimony at the habeas corpus [trial] . . . which points to any claim that he was coerced or mistaken in pleading guilty, or that his attorney misled him by giving wrong advice, or that his plea was induced by threats or misrepresentations." Lareau v. Warden, 161 Conn. 303, 308,288 A.2d 54 (1971).
Especially given the petitioner's admission on two occasions during his direct examination that he had perjured himself during the State v.Johnson proceeding, this Court finds the petitioner's testimony lacking CT Page 5404 in credibility. Consequently, the Court concludes that the petitioner's claim his trial attorney coerced him into changing his pleas is entirely without merit.
 COUNSEL'S FAILURE TO CONDUCT A PROPER INVESTIGATION
The petitioner alleges that his trial counsel rendered ineffective assistance because he "failed to conduct a proper investigation such that the State's chief witness, Samantha Martinez, could have been impeached by the fact that she entered into an arrangement with the State to exchange her testimony for a reduction in the charges pending against her[.]" Petitioner's Amended Petition at 2.
The determination whether the alleged attorney error prejudiced the petitioner by causing him to plead guilty rather than go to trial depends on the likelihood that the Ms. Martinez's likely testimony and impeachment thereof "would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the testimony and impeachment likely would have changed the outcome of the trial." Henry v. Commissioner of Correction, supra,60 Conn. App. 318.
At the habeas trial, the petitioner testified that he wanted Attorney Kavanewsky to investigate Samantha Martinez relative to her agreement with the State. The petitioner also testified that this request was not followed up by his counsel and that his counsel told him that Ms. Martinez's relationship with the State was not relevant. Aside from the plea transcript and the petitioner's statement to Bridgeport detectives, there is no other evidence before this Court regarding Ms. Martinez and her potential as an impeachable witness.
The petitioner's trial counsel testified that he was prepared to impeach Ms. Martinez if the matter had gone to trial. However, because of likely testimony that she was with the petitioner and his co-defendant, Harry Johnson, for an extended period of time prior to and including the commission of the murder, and that the petitioner and Harry Johnson were going to kill the victim, Attorney Kavanewsky concluded that there was a very strong likelihood of conviction.
The petitioner has failed to demonstrate that he would not have pleaded guilty, that he would have insisted on going to trial, and that the impeachment of Ms. Martinez would likely have been successful at trial.Copas v. Commissioner, supra, 234 Conn. 151. The Court finds that the petitioner has not rebutted the strong presumption that "counsel's conduct [fell] within the wide range of reasonable professional assistance."Safford v. Warden, 223 Conn. 180, 193, 612 A.2d 1161 (1992). "[T]hat is, CT Page 5405 the [petitioner has not] overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. The claim of ineffective assistance of counsel based on the failure to investigate is also without merit.
 CONCLUSION
The Court has found that the petitioner's claims that he was coerced into pleading guilty and that his counsel failed to investigate potential witness testimony, the latter resulting in the loss of potential impeachment of the witness, are without merit.
In summary, the petitioner has failed to demonstrate that his trial counsel's performance fell below the standard of reasonable competence. The petition for a writ of habeas corpus, therefore, is denied.
By the Court,
HON. DAVID M. BARRY, JTR